[Filed April 13, 1885.]

# C. W. BURRAGE ET AL., EX'RS, v. BONANZA GOLD AND QUICKSILVER MINING CO.

ACTIONS AND SUITS. — In this State, the distinction between actions at law and suits has not been abolished.

ID. — COUNTER-CLAIM. — A counter-claim to a suit must be one upon which a suit might be maintained by the defendant against the plaintiff. An unliquidated demand triable before a jury, and bearing no relation to the subject of the suit, cannot be used as a set-off to a suit in equity.

DOUGLAS COUNTY.    Defendant appeals.    Decree affirmed.

*W. B. Gilbert*, for Respondents.

"In an action by an executor or an administrator, no demands can be set off which were not held by the defendant at the death of the decedent." (Bliss Code Pleading, § 377; *Root* v. *Taylor*, 20 Johns. 137.) The decision in this case was based upon the statute, but that statute has been said by the courts of New York to be but a declaration of the law as it existed before. (*Mercein* v. *Smith*, 2 Hill, 213.) The claim of Ray and Doty, if it ever became due, matured after the decease of Charles Hodge, and on that account, if for no other reason, could not be a counter-claim to this suit. Under our Code the counter-claim in equity "shall be one upon which a suit might be maintained by the defendant against the plaintiff in the suit." (Civ. Code, § 389.) The mere existence of cross-demands will not be sufficient to justify a set-off in equity. (2 Story Eq. § 1436; *Naglee* v. *Palmer*, 7 Cal. 543.) The alleged counter-claim did not in any way grow out of the transaction upon which the suit was brought, and could not be pleaded as a counter-claim. (*White* v. *Williams*, 3 N. J. Eq. 376.)

*C. Ball*, and *William R. Willis*, for Appellant.

A demand assigned before the commencement of the suit may be set off. (Waterman Set-Off, § 96.) The demand need not be due at the death of the testator to be a set-off. (Waterman Set-Off, § 97; *Mathewson* v. *Strafford Bank*, 45 N. H. 104-

108.) The statutory counter-claim includes a set-off and more. It embraces not only the equitable set-off, but also any claim which the defendant may have against the plaintiff in the nature of a cross-action. (Waterman Set-Off, § 590; Howard New York Code, § 150, notes; Civ. Code, pp. 119, 120, §§ 71, 72; p. 191, § 389; *Boston Mills* v. *Eull,* 6 Abb. Pr. N. S. 319, 322.) Claims by or against executors may be set off. (Woods' Mayne Damages, § 132; *Irons* v. *Irons,* 5 R. I. 264; *Dorsheimer* v. *Bucher,* 7 Serg. & R. 8; *Medomak Bank* v. *Curtis,* 24 Me. 36; *Bordman* v. *Smith,* 4 Pick. 211.) Upon a foreclosure, the mortgagor whose personal liability is sought to be enforced may set off any debt or demand against the plaintiff which he may own at the commencement of the suit. (2 Jones Mortgages, §§ 1496, 1497; Waterman Set-Off, § 97; *Hooper* v. *Armstrong,* 69 Ala. 343.) It is only where an estate is insolvent, or there is a statutory inhibition, that claims purchased by the defendant are not good offsets against a suit brought by executors, or where the claims are in different relations to each other. (*Bridge* v. *Johnson,* 5 Wend. 341; *Root* v. *Taylor,* 20 Johns. 136; *Wolfersberger* v. *Bucher,* 10 Serg. & R. 10; *Whitehead* v. *Cade,* 1 How. (Miss.) 95.)

Lord, J.—This is a suit in equity for the foreclosure of a mortgage. In substance, it is alleged that on October 4, 1881, the corporation defendant made its note and mortgage to Charles Hodge for $1,550, due one year from date; that the mortgage was duly recorded on October 7, 1881; that no payment has been made thereon; that in March, 1883, Charles Hodge died, and the plaintiffs are the executors of his last will and testament, admitted to probate in Multnomah County; that the defendants Winterburn and Napier claim an interest in the mortgaged real estate through a lease of the same, executed on July 5, 1881, for a term of five years, and an extension of the same made on October 4, 1881, for an additional term of five years; that the lease and extension of the same were made subject to the mortgage by express agreement of the parties and the terms of the instruments; and that said mortgage was made

to secure a loan from Charles Hodge, to discharge the lien of a judgment on said real estate rendered in May, 1881, and that the lease of July 5, 1881, was to remain in escrow until the loan of this money should be secured.

The corporation denied that the lease or extension was made subject to the mortgage, and alleged that the company delivered the lease of July 5th to Winterburn and Napier, the lessees, and they thereupon took possession of the leased property; that on July 18, 1881, the lessees sold and conveyed to H. D. Ray and S. J. Doty a one-half interest in the lease; that on September 29, 1881, Ray and Doty conveyed their interest in the lease to Charles Hodge for $4,000; that on October 4th Charles Hodge paid on account of said purchase price $1,500, and has never paid the remainder; that on October 4, 1881, the company executed to Winterburn and Napier a five-years extension of the lease, and the conveyance of the half interest was surrendered up to Ray and Doty, and was canceled by them, and a conveyance of a half interest in the lease, and the extension was made direct from Winterburn and Napier to Charles Hodge by agreement of all parties; that after the death of Charles Hodge, and in May, 1883, Ray and Doty presented their claim for $2,500 balance to the executors of the will of Charles Hodge, deceased; that on July 2, 1883, Ray and Doty assigned said claim to the corporation, and on October 8 1883, the executors disallowed said claim.

Said corporation prayed for a decree for $2,500 against the plaintiffs. The reply denied the delivery of the lease before October 4, 1881; denied, on information and belief, the sale to Charles Hodge; the transfer of the claim to the corporation; the agreement to pay $4,000 for a half interest in the lease; and denied that any sum was due from Charles Hodge or his estate therefor. The decree found that the mortgage was subsequent to the lease of July 5, 1881, but prior to the extension of the lease, and decreed the foreclosure of the same and the sale of said real estate, subject to said lease. While it was maintained by counsel for the plaintiff that there was no evidence to justify the finding of the court that the extension of the lease was prior

to the mortgage, no appeal was taken from it, and the decree in that particular must be regarded as satisfactory.

The chief questions submitted at the argument and presented by this record are, (1) whether the matter alleged under our practice will constitute a set-off in equity; and (2) whether a demand can be set off which was not held by the defendant at the death of the decedent. In the practice Codes of nearly all the States, the old forms of action have not only been abolished, but they have abolished the distinction between actions at law and suits in equity. In this State the distinction heretofore existing between forms of action at law has been abolished (§ 1, Civ. Code); but proceedings in equity are still kept distinct from an action at law. (See ch. 5, Suits in Equity, Code, 189.) Mr. Bliss, in his valuable work on Code Pleading, has noticed this exception in our State, where he says:—

"We have seen that in the States adopting the New York system, except Kentucky, Arkansas, Iowa, and Oregon, the distinctions between actions at law and suits in equity are abolished, either directly, or by prescribing that there shall be but one form of action." (Bliss Code Plead. § 10.)

As a consequence of not always bearing this important distinction in mind when references have been made to the decisions of other States under the practice Codes, in *Beacannon* v. *Liebe*, 11 Oreg, 443, THAYER, J., said:—

"The appellant's counsel claimed upon the argument that our Code had so blended law and equity that if the facts alleged in the complaint showed a case cognizable in equity, although it was brought as an action, the court ought not to dismiss it, but to retain and try it as a suit. I am unable to indorse this view. Our Code, I think, preserves the forms of actions and suits as distinct from each other. There may be no very good reason why this distinction has been retained, but it is too strongly indicated in the Code to be ignored by the courts, and any change made in the practice in that particular must be effected by the legislative branch of the government. Litigants, in my opinion, will be compelled at their peril to select as to which of the two jurisdictions they will resort to for relief,

so long as the present line of partition between them is kept up."

In our practice, a suit is in equity, and relates to something of equitable as distinct from legal cognizance. It is admitted that the matter alleged as a set-off is of purely legal cognizance; but it is contended that it may be pleaded as a counter-claim to the suit of the plaintiffs, for the purpose of qualifying or reducing the amount of their demand. A counter-claim is comprehensive of both recoupment and set-off, and is also broader. In actions at law, or in suits in equity, it imports a claim opposed to, or which qualifies, or at least in some degree affects, the plaintiff's cause of action or suit. As applicable to suits in equity, it is provided by section 389, Civil Code, that "the counter-claim of the defendant shall be one upon which a suit might be maintained by the defendant against the plaintiff in·the suit; and in addition to the cases specified in the subdivisions of section 72, it is sufficient if it be connected with the subject of the suit." In construing this section in *Dove* v. *Hayden*, 5 Oreg. 501, the court say:—

"The counter-claim, therefore, which the defendant is authorized to interpose, must be one upon which a suit might be maintained by the defendant against the plaintiff in the suit, and must be connected with the subject of the suit."

Here it is plain that the counter-claim was dismissed on the ground that the original proceeding was a suit in equity, and the counter-claim was for a legal demand, and that it was not connected with the subject of the suit. Again the court say:—

"The° Code, in allowing counter-claims in suits in equity, seems to have adopted substantially the rule in.regard to filing cross-bills. Under the former chancery practice the cross-bill only relates to matter touching the matter in the original bill. It could not embrace new and distinct matters not embraced in the original bill; and if it did, no decree could be founded upon such matter."

See also *Beacannon* v. *Liebe, supra.*

In *Tribble* v. *Taul*, 7 Mon. 457, the court, in commenting

upon the cases in which courts of equity would entertain jurisdiction of set-off, say : —

"The demands must be·connected, or one must form the consideration of the other; or there must have been demands already completely liquidated and settled at law, such as mutual judgments; or there must be some obstacle to the complainant, who strives to set off his claim, proceeding at law, such as non-residence, insolvency, or the like; or the claim must be one over which chancery held either exclusive or concurrent jurisdiction originally."

The counter-claim under section 389, *supra*, must be one upon which a suit might be maintained by the defendant against the plaintiff in the suit, and in addition to the cases specified it is sufficient if it (the counter-claim) be connected with the subject of the suit. In construing this in *Dove* v. *Hayden*, *supra*, the court said the counter-claim must be one upon which the defendant might maintain a suit against the plaintiff in the suit. But going further, and giving to the last clause, "if it be connected with the subject of the suit," the broadest construction possible, and allow and concede it to include counter-claims which embody legal as well as equitable matters or demands, provided such counter-claims be connected with the·subject of the suit, will it avail the defendant in this suit?

The claim of the defendant alleged as a set-off is not one upon which a suit might be maintained by the defendant against the plaintiff in the suit. It is purely of legal cognizance, and this is admitted. But is it connected with the subject of this suit? The subject of this suit relates to the origin and ground of the plaintiff's right to recover or obtain the relief asked. That which is connected with, grows out of, or is the direct result of, the transaction which the plaintiff alleges as the ground of demand, may be set up as a counter-claim; but the defendant must be able to trace the origin of his right or claim for relief to the transaction itself, which furnishes the plaintiffs their ground of suit. Now it is clear that the counter-claim alleged by the defendant did not arise out of the transaction set forth as the foundation of the plaintiff's claim, nor is it connected with the subject of the suit.

The claim of the defendant is for money alleged to be due for an interest in a lease sold by Ray and Doty to Hodge, and assigned by them, after it had been disallowed and rejected by the executors, to the defendant. Plainly this is not a matter that arises out of the subject of the suit, or has any connection with the plaintiff's right to obtain the relief asked. The origin of the defendant's right to relief, arising out of this state of facts, cannot be traced to the transaction itself which furnishes the plaintiffs their grounds of suit. It has no connection with it whatever, and cannot, therefore, be allowed as a counter-claim in this suit.

Turning now to the facts as disclosed by the record, we find at the threshold of the defendant's claim a dispute as to the terms of the contract upon which the lease interest was sold by Ray and Doty, the plaintiffs, as the executors of Hodge, claiming that there was no balance due on the contract; that by the terms of the contract Hodge was to pay $1,500 down, which he did and is admitted, and the remainder was to be made out of the mine. In other words, that Hodge's agreement was to pay a further $2,500 when it was made out of the mine. On the other hand, Ray and Doty claim, when the work was suspended because the mine could not be operated successfully, that a failure to get out the silver would not defeat the claim. If the silver could have been gotten out, no matter how great the cost, they must do it or pay the balance. The operation of the mine was suspended after the death of Hodge, and it was then that Ray and Doty claimed the balance to be due, and presented the claim to the plaintiffs as executors, and it was rejected. A short time before this suit was commenced, Ray and Doty assigned the claim to the defendant, and it was evidently for the purpose of trying to use it as a set-off. The defendant knew the claim was disputed, and that its settlement could only be effected through the instrumentality of a law action.

Here, then, we have an unliquidated demand, triable before a jury, and in no way connected with the subject of the suit, which the defendant seeks to litigate in a suit in equity, and if, per-adventure, the claim should be established, then to use it as a

set-off. It bears no relation to a debt due, or liquidated demand, which, although arising in a different right, is sometimes allowed in equity as a set-off by reason of circumstances which make it equitable to do so. We do not think such a claim can be used as a set-off to a suit in equity, and as a counter-claim it has no connection with the subject of the suit. Upon the second point it was claimed that whether the alleged balance was overdue or not, the claim could not be assigned after the death of Hodge so as to become a counter-claim against a suit brought by the executors to collect the assets of the estate. But it is suggested that as the matter may be the subject of an action at law, and as the result we have reached takes it out of the record, it is better for us to forbear an examination of that subject.

The decision must be affirmed.