[Decided May 24, 1887.]

## [1]McDONALD v. MACKENZIE.

[S. C. 14 Pac. Rep. 868.]

<div style="float:right">24 573<br>41 607</div>

1. SET-OFF — INDIVIDUAL AND PARTNERSHIP DEBTS.— Ordinarily a debt due by one partner cannot be set-off against a debt due to the firm, even though it is so agreed with the partner owing the debt, yet it may be done with the consent of all the partners.

2. BILLS AND NOTES — SET-OFF — DEFENSES TO NOTES TRANSFERRED AFTER MATURITY.[2]— One who takes negotiable paper after maturity takes it subject not only to equities inherent in the paper, but subject also to all payments, or set-offs in the nature of payments, that may have attached to it in the hands of prior holders.

3. SET-OFF — INDIVIDUAL AND PARTNERSHIP DEBTS.— Where both members of a partnership agree with the maker of a promissory note due to one of them that the amount of such note may be applied to the payment of a demand by such holder against the firm, but the note is assigned after maturity to another person, instead of being cancelled, the one may be offset against the other.

4. EQUITY — DECREE UPON CLAIM SUBJECT TO SET-OFF — INJUNCTION TO RESTRAIN EXECUTION.— Where one has obtained a decree upon a note and mortgage, which was subject to a counterclaim against his assignor, who is insolvent, the court in which the decree was rendered may entertain an original bill to restrain its enforcement.

Umatilla County: LUTHER B. ISON, Judge.

In substance the facts are these: The defendants Mackenzie & Cavanaugh are copartners. On the thirty-first

[1] Not heretofore officially reported.

[2] NOTE.— See an extended citation of authorities on this question in a note on page 327 of 23 L. R. A.—REPORTER.

day of June, 1882, the plaintiff McDonald, being indebted to the defendant Cavanaugh, made and delivered to him a certain promissory note, wherein he agreed to pay to the order of said Cavanaugh a sum therein named, etc., and secured the same by a mortgage. On the —— of March, 1884, the defendants Mackenzie & Cavanaugh, as partners, were indebted to the plaintiff McDonald, in a sum largely in excess of said note, which indebtedness arose out of a sale of wheat by plaintiff to them. As a part of that transaction, it was agreed by the parties thereto, including Cavanaugh individually as payee of the note, that the said note should be delivered to the plaintiff, and accepted by him as part payment for the wheat, but Cavanaugh neglected to do so and assigned the same to the defendant Smith after its maturity. The plaintiff obtained a judgment upon his wheat transaction against the defendants Mackenzie & Cavanaugh, who are now insolvent, and out of the state. The defendant Smith obtained a decree upon said note and mortgage so assigned to him after its maturity, and has had execution issued thereon, and caused the sheriff to advertise the property of the plaintiff for sale, etc., and, as plaintiff alleges, will, unless restrained, have the same sold, to his irretrievable injury. Plaintiff, therefore, prays that the defendant Smith may be perpetually enjoined from the enforcement of said decree; that the same be set off against the amount of the judgment due the plaintiff from the defendants Mackenzie & Cavanaugh; and that the said Smith be required to surrender said note for cancellation. A demurrer to the complaint having been sustained, and the plaintiff declining to plead further, on motion, the decree from which this appeal is taken was entered. Reversed.

*Lewis B. Cox,* for Appellant.

*John J. Balleray,* for Respondents.

MR. CHIEF JUSTICE LORD delivered the opinion of the court:

1. From the foregoing statement of the facts, it is manifest that the main object of this suit is to secure a set-off, or what is in the nature of a set-off, between plaintiff's said judgment against the partnership, and the decree obtained by Smith upon the mortgage assigned to him by Cavanaugh under the circumstances above stated. It is insisted by counsel for the defendant Smith, in support of the demurrer, that the complaint does not state facts sufficient to constitute a cause of suit, because the matter alleged would have been no defense to the original suit of *Smith* v. *McDonald,* as it does not constitute matter of counterclaim, set-off, or recoupment, or any equitable defense. The basis of his contention is that neither at law nor in equity can a debt due to one member of a firm be offset against the joint debt of the partnership, nor can such joint indebtedness be offset against the assignee, for value, of a debt due one of the partners. It is true that a separate debt cannot, ordinarily, be set-off against a joint debt, nor a joint debt against a separate debt, but special circumstances may occur, which, in equity, will justify such an interposition. "Where there is an agreement," said HEMPHILL, C. J., "that a separate debt may be discounted against a joint debt, or conversely, or where it appears that a joint credit was given on account of a separate debt, and also, under other equitable circumstances not necessary to be enumerated, the debts, though not mutual or in the same right, will be allowed to be interposed against each other": *Henderson* v. *Gilliam,* 12 Tex. 74; Story, Equity, Jurisprudence, § 1437, and notes. While, therefore, a debt due from one partner cannot be set-off against a debt due the firm, (*Williams* v. *Brimhall,* 13 Gray, 462,) even though so agreed with such partner, (*Evernghim* v. *Ensworth,* 7 Wend. 326; *Rogers* v. *Batchelor,*

12 Pet. 221) yet it may be done if the other partners, knowing of such agreement, have assented thereto": *Eaves* v. *Henderson*, 17 Wend. 191; *Homer* v. *Wood*, 11 Cush. 62.

2. It is said, however, that a party who takes a note for value after maturity, acquires it subject to such equities only as are connected with or inhere in the paper, but exempt from all equities arising out of independent and collateral transactions; that, under the law merchant, the note in question passed to the defendant Smith exempt from all rights of set-off on account of independent transactions between the original parties, which are not properly equities. This is undoubtedly the English rule upon the subject: *Burrough* v. *Moss*, 10 Barn. & C. 558; *Whitehead* v. *Walker*, 10 Mees. & W. 698; see also Story, Bills, 220; Daniel, Negotiable Instruments, §§ 1435–1437. It is thought, however, that a different rule prevails in this country, although there is some conflict in the decisions: Daniel, Negotiable Instruments, §§ 1435–1437, and authorities cited in note; Waterman, Set-off, § 279, and notes. The decisions adverse to the English rule proceed on the theory that a bill or note endorsed after it becomes due is taken by an indorsee with notice on its face that it is discredited, and, therefore subject to all payments, and offsets in the nature of payments. "Not," as CRESSWELL, J., said, "that he takes the bill subject to all its equities, (*Sturtevant* v. *Ford*, 4 Man. & G. 106,) but subject to all the equities between the prior parties. It is not perceived how, under the facts, the operation of the English rule can exclude such a defense or equity. In *Burrough* v. *Moss*, 10 Mees. & W. 698, PARKE, B., said: "If there is an agreement, either expressed or implied, affecting the note, that is an equity which attaches upon it, and is available against any person who takes it when overdue." And in *Oulds* v. *Harrison*, 28 Eng. L. & Eq. 524, the same distinguished jurist said: "It must be considered as entirely settled by the case of *Burrough* v. *Moss* that the indorsee of an overdue

bill takes it subject to all the equities that attach to the
bill itself in the hands of the holder when it was due; as,
for instance, payment or satisfaction of the bill itself to
such holder. But the indorsee does not take it subject to
the claim arising out of collateral matters. There are
cases where the bill has been paid, or where the lien has
been created on the bill in the hands of the holder, at the
time it was due. In that case, the subsequent taker of the
bill must take it subject to repayment, or right of action,
or that lien, whatever it may be; but the indorsee does
not take it subject to the claim arising out of collateral
matter. The notice of the existence of the set-off holder of
the bill, at the time when it was due, makes no difference,
as was settled in the case of *Whitehead* v. *Walker*, 10 Mees.
& W. 698, unless, indeed, express notice was given by the
party liable, and evidence of the acquiescence, such as
would amount to proof of an agreement to let in the set-
off, assented to by both parties; and then it would be in
satisfaction of the bill, and depend entirely upon the stat-
ute itself."

In *Robinson* v. *Lyman*, 10 Conn. 34, in which it is sup-
posed the English rule was followed, the court, through
CHURCH, J., said: "There was no infirmity, no illegality,
nor legal nor equitable defense existing against the note
in question, while it remained in the hands of Moore, the
payee, growing out of the existence of the note due to
Patten & Russell. There was no agreement between the
original parties to the note before its transfer, that the
defendants should pay to Patten & Russell their note, and
have an application thereof upon the note in question.
Indeed there was no connection, either in fact or by agree-
ment of parties, between the note in dispute and the debt
due to Patten & Russell. If payment had been made,
either partially or in full; if there had been a failure or
fraud in the consideration of the note, or any illegality
therein; or if there had been any agreement between the

parties affecting the note, before it was transferred to the plaintiff,—these, and other matters which might be suggested, would have created such an infirmity, defense, or equity, as would have attached to the note in the hands of the plaintiff." See also *Britton* v. *Bishop*, 11 Vt. 70; *Armstrong* v. *Noble*, 55 Vt. 431; *Haley* v. *Congdon*, 56 Vt. 67; *Thretkeld* v. *Dobbins*, 45 Ga. 145; *Miller* v. *Florer*, 15 Ohio St. 149; *Farrington* v. *Bank*, 39 Barb. 646. It is clear, then, that the maker and the payee of a note may, by an agreement made before its transfer, provide in any legitimate way for its payment, and this, if acted upon and performed before such transfer, will operate as a payment or satisfaction of such note. Such an agreement between the parties before the transfer, when carried out, affects directly the note, and whoever thereafter takes such overdue note, takes it subject to the highest equity—the equity of payment.

3. Now the payee of the note in question promised and agreed with the maker,—the firm of which the payee was a member consenting to the arrangement,—at the time, and as a part of the transaction of the purchase by, and sale of a lot of wheat to, the firm, that the said note should be allowed and taken as part payment for said wheat, and in accordance with that agreement the wheat was delivered, and the firm became indebted to the plaintiff in an amount largely in excess of said note. The object of this agreement was plainly to liquidate the note, and operated, when executed, as payment thereof. In *Eaves* v. *Henderson*, 7 Wend. 192, it was held that an agreement made after the giving of a note, that a debt contemplated to be contracted by the payee with a third person, should be allowed in payment of the note, is a valid agreement, and the debt, when contracted, may be shown in payment of the note under the general issue. Cowen, J., said: "An agreement to apply a subsequent account to be run up by the plaintiff with Nicholls, or with him

and his partner, the account afterwards being made, and that, too, as here, with the assent of the partner, would inure as payment, beyond all doubt, and come in as such under the general issue: *Kinnerly* v. *Hossack*, 2 Taunt. 170; *Roper* v. *Bumford*, 3 Taunt. 76. And an agreement to apply a distinct, independent, precedent debt, the agreement having been made after the note was given, has also recently been held to operate as payment: *Gardiner* v. *Callendar*, 12 Pick. 374." In the case in hand, the note, instead of being delivered to the plaintiff as was agreed, was transferred, under the circumstances of insolvency as alleged, after its maturity, to the defendant Smith, who is also insolvent. Now, if the note was paid, it being overdue when transferred, Smith took it subject to an infirmity or equity which attached to the note itself, viz., payment. It being overdue, its face gave him notice of its dishonor when transferred, and he took it subject to the same defenses as if it had remained in the hands of the payee. Cavanaugh, certainly, could not admit the facts of that agreement, and the payment effected under it, and maintain an action on the note; neither can his assignee, who, as to such an equity or defense, stands in his shoes. He takes it with notice—for so the law intends—of such equity or defense, and is chargeable therewith. Said TILGHMAN, C. J.: "The counsel for the plaintiff concede that if the holder receive the note, knowing that payments had been made, he shall allow these payments. And why? Because it would be fraudulent not to do so. But if actual notice will affect the holder, so also will implied; because the consequences of actual and implied notice are the same. Now, if a man receive a note under circumstances calculated to excite suspicion, he ought to make further inquiry, and, if he does not, he takes upon himself the knowledge of all the material facts. One of the circumstances which have been held sufficient to excite suspicion, is the note being overdue. Before the day of payment it

is to be presumed that payment will be punctually made. The note passes from hand to hand on that presumption and its credit is entire.   But not being paid, it appears on the face of the note that faith has been broken, or that, for some latent cause, it is questionable whether payment ought to be made": *Cromwell* v. *Arrott*, 1 Serg. & R. 182. The assignee can always go to the debtor, or to the maker of a note, which is then overdue, and ascertain whether it is paid or not, or what claims he may have against it, before purchasing it.   If he neglect to take these precautions, or be indifferent about acquiring knowledge on the subject, he cannot rightfully complain of the consequences with which the law charges him.

4.   It is next objected that the bill is an original one to enjoin a decree of the same court.   There is no doubt but that the authorities on this subject are somewhat conflicting and not wholly reconcilable.   None of those referred to by counsel for the defendant Smith, with the exception of *Dyckman* v. *Kernochan*, 2 Paige, 26, since expressly overruled by *Erie Ry. Co.* v. *Ramsey*, 45 N. Y. 637, are in point as to this question.   The case is quite different when a court undertakes by injunction to restrain or interfere with the proceedings of another court of like jurisdiction. In a proper case, we think that a court of equity may entertain an original bill to enjoin the execution of its own decrees, (*Montgomery* v. *Whitworth*, 1 Tenn. Ch. 174; *Anderson* v. *Mullenix*, 5 Lea, 288; 1 High, Injunctions, § 270,) and as at present advised, must reverse the decree and remand the cause.   REVERSED.