Decided 30 June, 1902.

## LE CLARE *v.* THIBAULT.

[69 Pac. 552.]

NOTE AND MORTGAGE—ANSWER.

1. The answer in a suit to foreclose a mortgage securing a note for the purchase price of certain property, alleging that when the property was bought "it belonged to the E. Co.," and that plaintiff had no interest in it; that the note and mortgage were taken in his name, in trust for said company, and defendant had paid the money due on the note to said company,—is bad, as against demurrer, it not alleging that said company was a corporation or partnership, or was authorized to receive the money, or capable of discharging defendant because of such payments, and in not stating the right of the company to receive the money.

SUIT TO FORECLOSE MORTGAGE—EQUITABLE COUNTERCLAIM.

2. An answer in a suit to foreclose a mortgage securing a note for the price of an interest in a mine alleging that plaintiff made an agreement to purchase, at the lowest price, such interest for defendant; that subsequently plaintiff falsely represented that he was the owner of an interest therein, which had cost $2,500, when he had paid only $2,165 therefor, and defendant, relying thereon, purchased the interest for $2,500, giving the note and mortgage as part payment; that defendant sent money to operate the mine, but plaintiff converted part of it to his own use, falsely representing that he had used it for expenses,—does not state a counterclaim in equity under Hill's Ann. Laws, § 73, as modified by Section 393; the only matter alleged which is at all connected with the contract on which the suit is founded, and the subject of the suit, the note and mortgage, being misrepresentation as to the cost of the interest in the mine, which it is not reasonable to suppose defendant had in contemplation when executing the note.

PLEADING—SEPARATE STATEMENT OF COUNTERCLAIM.

3. Under Hill's Ann. Laws, § 73, subd. 1, providing that each defense and counterclaim shall be separately stated, a counterclaim is not well pleaded where joined with the other parts of the defense.

COUNTERCLAIMS AVAILABLE AS OFF SETS IN EQUITY.

4. Counterclaims arising in a different right from the cause of complaint will sometimes be allowed in equity, under unusual circumstances.

EQUITABLE SET OFF AGAINST AN INSOLVENT.

5. The insolvency of the person against whose demand a counterclaim is sought will justify equitable interference in cases not provided for by statute.

PLEADING COUNTERCLAIM—ADMITTING PLAINTIFF'S DEMAND.

6. In pleading a counterclaim there must be something to claim against, so that of necessity the demand of plaintiff must be at least partially admitted.

REQUISITES OF AN ANSWER STATING A COUNTERCLAIM.

7. An answer which is intended to contain a counterclaim must state a cause of action or suit against the plaintiff and in favor of the pleader, and the omission of a material averment will be fatal; for instance, a suit having been brought to foreclose a mortgage securing a note, a plea of counterclaim alleging fraud in the sale on which the note was based, and a subsequent misappropriation of funds by plaintiff as defendant's agent, is not good because it does not show that any damage resulted from the fraud, or that any accounting has been demanded of plaintiff and refused.

COUNTERCLAIM FOUNDED ON TORT.

8. A counterclaim may be based on a breach of the contract sued on, though the breach amount to a tort.

From Baker: ROBERT EAKIN, Judge.

This is a suit by Edmond D. Le Clare against N. H. Thibault and another to foreclose a mortgage. It is alleged in the complaint that on April 6, 1901, the defendants, in part consideration for the purchase of an interest in certain quartz mines in Baker County, Oregon, executed to plaintiff their promissory note for the sum of $2,000, payable in six months, with interest, secured by a mortgage on the premises so purchased; that, no part of the note having been paid, the prayer is that the mortgage be foreclosed, and said interest in the mines be sold to satisfy the debt. The answer denies the material allegations of the complaint, except as thereinafter stated, and avers as a first separate defense that at the time said property was purchased it belonged to the Empire Mining Company, and plaintiff did

not then own, nor has he since secured, any interest therein; that
the note and mortgage were taken in his name in trust for the
company; and that the defendants have paid said company the
sum so secured since this suit was instituted.   For a second de-
fense, and by way of counterclaim, it alleges, in substance, that
about March 1, 1901, an agreement was entered into whereby
plaintiff was to purchase, at the lowest price, an interest in said
mines for the defendant N. H. Thibault, who was to furnish
him the money therefor, and give him $50 a month for his
services in operating the mines and one-fifth of the net proceeds
of their output; that about April 6, 1901, plaintiff falsely rep-
resented to said defendant that he was the owner of an undivided
one-fourth interest in said mines, and the latter, relying thereon,
was induced thereby to purchase said interest for $2,500, paying
$500 down, and giving the note and mortgage mentioned in the
complaint; that N. H. Thibault, being absent from said county,
sent the necessary means to operate the mines, requesting plain-
tiff to furnish monthly statements of the expenses incurred, and
he, complying therewith, but intending to cheat, wrong, and
defraud said defendant, falsely reported that he had expended
certain sums greater than those actually paid out, thereby con-
verting to his own use the difference between the payments so
made and those represented, but, plaintiff having neglected to
keep any books, it is impossible for defendants to state the sums
so appropriated, excepting in the following particulars: That
he induced the employees at the mines to execute blank receipts,
wrote over their signatures false sums purporting to have been
paid them, and fraudulently represented that he had incurred on
account thereof an expense of $2,449.35, when he had so ex-
pended only $1,527.60; that he wrongfully represented that said
interest in the mines cost $2,500, when he paid therefor only the
sum of $2,165; and that plaintiff is insolvent and unable to
respond in damages.   The prayer of the answer is that an ac-
counting be decreed between the parties concerning all matters
arising out of the relations existing between them, and, if any
sum be found due plaintiff on the note, it may be offset by such
sums as may be ascertained to be due from him to the defendant

N. H. Thibault, and that the latter may have a decree against him for any remainder of such overpayments. A demurrer to the separate defenses on the ground that neither stated facts sufficient to constitute a defense having been sustained, and the defendants declining to plead further, a decree was rendered against them foreclosing the mortgage, and they appeal.

AFFIRMED.

For appellants there was a brief over the name of *Smith & Heilner,* with an oral argument by *Mr. Joseph J. Heilner.*

For respondent there was a brief and an oral argument by *Mr. Chas. A. Johns.*

MR. JUSTICE MOORE, after stating the facts, delivered the opinion of the court.

1. It is not alleged in the first separate defense that the Empire Mining Company is either a corporation or a partnership, or that it was authorized to receive the money due on the note, or capable of discharging the defendants from their liability in consequence of the alleged payment. The allegations of new matter in the answer having been challenged by demurrer, the averments of fact therein are to be most strongly construed against the pleader *(Cederson* v. *Oregon Nav. Co.,* 38 Or. 343 (62 Pac. 637, 63 Pac. 763) ; and, the answer having failed to state the right of the alleged *cestui que trust* to receive the money, no error was committed in sustaining the demurrer to this part of the answer.

2. It is contended by defendants' counsel that the averments of fact in the second separate defense are such that a suit thereon might be maintained by the defendants against the plaintiff, and that the matters thus alleged are so connected with the subject of the suit as to constitute a counterclaim in equity, and therefore the court erred in sustaining the demurrer to this part of the answer. The statute prescribing the mode of putting in issue the averments of the complaint and of alleging facts establishing a defense in an action at law is as follows:

"The answer of the defendant shall contain: (1) A specific denial of each material allegation of the complaint controverted by the defendant, or of any knowledge or information thereof sufficient to form a belief. (2) A statement of any new matter constituting a defense or counterclaim in ordinary and concise language without repetition": Hill's Ann. Laws, § 72. The counterclaim mentioned in section 72 must be one existing in favor of a. defendant and against a plaintiff, between whom a several judgment might be had in the action, and arising out of one of the following causes of action: (1) A cause of action arising out of the contract, or transaction set forth in the complaint as the foundation of the plaintiff's claim. (2) In an action arising on contract, any other cause of action arising also on contract, and existing at the commencement of the action: Hill's Ann. Laws, § 73. In suits in equity, however, the statute prescribing this form of defense is as follows: "The counterclaim of the defendant shall be one upon which a suit might be maintained by the defendant against the plaintiff in the suit; and in addition to the cases specified in the subdivisions of section 73, it is sufficient if it be connected with the subject of the suit": Hill's Ann. Laws, § 393. Construing these sections in *pari materia,* and changing the word "action" to "suit," the rule applicable to a counterclaim in equity would be an enlargement of subdivision 1 of Section 73, identical with Section 150, Howard's New York Code, from which it was probably copied, making it read as follows: "A cause of suit arising out of the contract, or transaction set forth in the complaint, as the foundation of the plaintiff's claim, or connected with the subject of the suit." While the common-law forms of action have been abolished in this state (Hill's Ann. Laws, § 1), the distinction between actions at law and suits in equity has not been abrogated (Hill's Ann. Laws, § 380; *Beacannon* v. *Liebe,* 11 Or. 443, 5 Pac. 273; *Ming Yue* v. *Coos Bay Nav. Co.,* 24 Or. 392, 33 Pac. 641; *Willis* v. *Crawford,* 38 Or. 522, 63 Pac. 985, 64 Pac. 866, 53 L. R. A. 904). Thus, in a suit to foreclose a mortgage, a demand triable before a jury, and having no relation to the subject of the suit, cannot be used as a set-off to the plaintiff's de-

mand: *Burrage* v. *Bonanza G. & Q. Min. Co.,* 12 Or. 169 (6 Pac. 766). A counterclaim in equity must be connected with the subject of the suit, and contain such an averment of facts as to authorize the defendant to maintain a suit thereon against the plaintiff: *Sears* v. *Martin,* 22 Or. 311 (29 Pac. 890). "The subject of the action," says Mr. Bliss in his work on Code Pleading (section 126), "is, ordinarily, the property or contract and its subject-matter, or other thing involved in the dispute." To the same effect, see Pomeroy, Code Rem. § 775; 22 Am. & Eng. Enc. Law (1 ed.), 396. According to this definition, the subject of the suit in the case at bar is the promissory note and its incident, the mortgage, given to secure its payment. The matters set forth in the second separate defense, except in one particular, did not arise out of the contract set forth in the complaint as the foundation of plaintiff's claim, and it remains to be seen whether the averments of fact in the answer are connected with the subject of the suit. The connection of the counterclaim with the subject of the suit, to render it available, must be direct and immediate, and such as it is reasonable to assume that the parties had in contemplation when dealing with each other: 22 Am. & Eng. Enc. Law (1 ed.), 397; Pomeroy, Code Rem. § 794. The only part of the answer that is at all connected with the subject of the suit is the averment that plaintiff wrongfully represented that the interest in the mines which he purchased for the defendant N. H. Thibault, and for which the note was given, cost $2,500, when he paid therefor only $2,165. It is unreasonable to suppose that the defendants, when they executed the note, had any thought of the plaintiff defrauding them, or that he intended to wrong N. H. Thibault in purchasing an interest in the mines for him; and, as the contemplation of the parties when entering into the contract or performing the transaction which forms the subject of the suit constitutes the test of the connection with it, it follows that the facts alleged in this part of the second separate defense do not bring the case within the provisions of subdivision 1, Section 73, Hill's Ann. Laws, as modified by section 393 thereof; and the counterclaim, in so far as it relates

to the purchase price of the interest in the mines, is not available on that ground.

3. Another reason why the alleged misrepresentations in respect to the purchase price of an interest in the mines cannot become the foundation of a counterclaim grows out of the failure of the defendants to comply with the statute prescribing the method of alleging the facts constituting such defense, which is as follows: "The defendant may set forth by answer as many defenses and counterclaims as he may have. They shall each be separately stated, and refer to the causes of action which they are intended to answer in such manner that they are intelligibly distinguished": Hill's Ann. Laws, § 73. The subject of the suit being the note, the only part of the defense that could be in any manner connected therewith is the alleged misappropriation by the plaintiff of a part of the purchase price, and, as the facts constituting such defense are not separately stated, but are joined with the other parts of the defense, the counterclaim cannot be based upon subdivision 1 of section 73, as modified by the rule in equity prescribed by section 393.

4. It is maintained by defendants' counsel that the averments of facts constituting the second separate defense conclusively show that in pursuance of a contract entered into between the parties plaintiff became the agent of the defendant N. H. Thibault, and, having converted to his own use money belonging to the latter, the fiduciary relation thus established and the alleged insolvency of the plaintiff give a court of equity jurisdiction of the counterclaim, independent of the provisions of the statute regulating the applicability of such defenses, and hence the court erred in sustaining the demurrer to this part of the answer. Invoking the maximum that equity will not suffer a wrong without a remedy, it has been held that a counterclaim arising in a different right will sometimes be allowed in a suit by reason of circumstances that render it equitable to do so: *Burrage* v. *Bonanza G. & Q. Min. Co.,* 12 Or. 169 (6 Pac. 766) ; *McDonald* v. *Mackenzie,* 24 Or. 573 (14 Pac. 866) ; *Mitchell* v. *Holman,* 30 Or. 280 (47 Pac. 616).

5. The rule is well settled that the insolvency of a party against whose demand a counterclaim is sought to be interposed is a sufficient ground for equitable interference in cases not provided for by statute: Waterman, Set-Off, § 431; *Wray's Adm'rs* v. *Furniss,* 27 Ala. 471; *Pond* v. *Smith,* 4 Conn. 302; *Doane v. Walker,* 101 Ill. 628; *Keightley* v. *Walls,* 27 Ind. 384.

6. Assuming, without deciding, that the allegations constituting the second separate defense are sufficient to confer upon a court of equity jurisdiction of the subject-matter, we will examine the averments of new matter in the answer to see if they state facts sufficient to constitute a defense. Before a defendant can be permitted to plead a counterclaim as a defense to plaintiff's cause of suit, he must admit the existence, at least, of a part of his adversary's demands: *Dove* v. *Hayden,* 5 Or. 500. In the case at bar, the answer having specifically denied each material allegation of the complaint "except as hereinafter stated," it may well be doubted if this qualified denial permits the defendants to rely upon the counterclaim interposed.

7. An answer setting up a counterclaim must contain the substantial requisites of a complaint, and allege facts which legally entitle the defendant to recover in a suit instituted by him for that purpose against the plaintiff; and, if his pleading omits any allegation that would be necessary to state a cause of suit, it will be vulnerable to a demurrer interposed on that ground: 19 Enc. Pl. &· Prac. 753, 754. To secure an accounting in equity, it is necessary to allege that the party seeking such relief has made a demand therefor of the adverse party, who refused to comply therewith: 1 Enc. Pl. & Prac. 98; *Perry* v. *Foster,* 62 How. Prac. 228; *Magauran* v. *Tiffany,* 62 How. Prac. 251.

8. While the counterclaim relied upon would seem to sound in tort, it is alleged to have originated in contract, and a demand arising upon contract is none the less available to a defendant in a suit on the contract because a breach thereof may amount to a tort (22 Am. & Eng. Enc. Law, 1 ed., 390) ; and, this being so, to render the counterclaim available it was necessary to allege the nature of the contract, the extent of the breach, and the amount of damages (19 Enc. Pl. & Prac. 761; *Merrill* v. *Everett,*

38 Conn. 40). The answer does not state that the defendants sustained any damage by reason of plaintiff's alleged fraudulent representations, nor does it aver that they demanded of him an accounting. The plaintiff may have fully compensated the defendants for all damages they sustained in consequence of his alleged false representations, and, if he did so, they have no cause of suit against him. The answer having failed, in the particulars indicated, to state facts sufficient to constitute a counterclaim, no error was committed in sustaining the demurrer, and the decree is affirmed.          AFFIRMED.