Argued February 16, affirmed March 29, 1921.

## TAYLOR *v.* BUCKNER.

(196 Pac. 839.)

**Bills and Notes—Purchase After Failure to Pay Interest may be Before Maturity for Value.**

1. If a note did not contain an acceleration clause, and had not matured because of failure to pay accrued interest, a purchaser thereof in good faith for value was a purchaser before maturity for value.

**Setoff and Counterclaim — Only Defenses Existing at Time of Assignment can be Interposed.**

2. Makers of note can interpose against an assignee only such defenses, equities and counterclaims as existed in their favor against the payee before notice of the assignment, under Section 28, Or. L.

---

1. Failure to pay periodical installment of interest as making note overdue, see notes in 11 **Ann. Cas.** 42; Ann. Cas. 1912C, 305.

Effect on *bona fides* of purchase of promissory note that there is interest due and unpaid on it, see note in 11 **A. L. R.** 1277.

**Setoff and Counterclaim—Cause of Action Extinguished by Judgment and Could not be Set Up as Counterclaim.**

3. Unliquidated claims against payee in note, made certain by a judgment after assignment of the note pending the action, were extinguished in the judgment, so that they could not be used, either as a cause of action or counterclaim in an action on the note, and the judgment was not binding on the assignee, and could not be set up as a counterclaim.

From Jefferson: T. E. J. DUFFY, Judge.

Department 1.

Crosby Taylor, being the owner of a note and mortgage signed by W. C. Buckner and his wife, Mary Buckner, brought this suit against the Buckners to foreclose the mortgage. There was a decree for the plaintiff and the defendants appealed. The principal questions for decision arise out of an alleged counterclaim pleaded by the Buckners.

John S. Dillon deeded a tract of land to W. C. Buckner. On November 18, 1916, the date of the conveyance, W. C. Buckner paid $1,000 to Dillon and for the remainder of the purchase price Buckner and wife gave to Dillon their promissory note in the sum of $2,400, and the Buckners secured the note by a mortgage on the land.

The note is made payable "four years after date," to the order of Dillon with interest at the rate of 8 per cent per annum, "interest payable annually." The note does not contain an acceleration clause. The mortgage, however, has in it the following provision:

"In case default shall be made in the payment of the principal and interest when either principal or interest shall become due, then the whole sum shall immediately become due and payable and the mortgagee, or his legal representatives may foreclose this mortgage at any time thereafter."

On January 5, 1918, Dillon transferred and assigned the note and mortgage to Crosby Taylor, the plaintiff; and on the same day Taylor's attorney writing from Portland, addressed a letter to Buckner, at Oregon City, advising Buckner that the note and mortgage had been assigned to Taylor, and requesting Buckner to pay to Taylor the interest amounting to $192, which became due on November 18, 1917. This letter was received by Buckner in due course of mail.

On January 8, 1918, the assignment to Taylor was duly recorded. On the following fourth day of February, Taylor's attorney again wrote to Buckner, demanding payment of the interest and stating that, upon failure to make immediate payment, suit would be brought to foreclose the note and mortgage. The interest was not paid, and accordingly on May 2, 1918, Taylor began this suit in foreclosure in Jefferson County, where the land is located.

The Buckners allege in their answer that when W. S. Buckner purchased the land, Dillon told Buckner that one Van Noy was in possession of the land, but that he had no lease and his possession was unlawful; that—

"said Dillon further stated that he would take $3,400 for said premises if Buckner would take the same with said Van Noy in possession, but that if Buckner would pay $1,100 in cash and give said Dillon a mortgage on said property for $2,400, that said Dillon would remove said Van Noy from said premises and give Buckner immediate possession thereof.

"That Buckner thereupon paid to Dillon the said sum of $1,100 cash and executed and delivered to said Dillon his note for $2,400, payable four years after November 18, 1917, and a mortgage upon said land to secure said note, and Dillon and wife exe-

cuted and delivered to plaintiff their said deed to said lands as aforesaid, and agreed to remove said Van Noy immediately from said premises and give Dillon immediate possession thereof."

Continuing with their answer, the Buckners aver that—

"Dillon failed to remove said Van Noy from the possession of said premises, but left said Van Noy in possession thereof until October 1, 1917, and failed to put Buckner into possession."

The Buckners next allege in their answer that because of the failure of Dillon to put them in possession they sustained damages in the following particulars:

1. If, according to the answer, Buckner had been put in possession he would have sowed 60 acres of the land to barley in the spring of 1917 and would have raised barley worth $50 a ton; and after harvesting the barley the land would have been in condition to plant wheat in the fall of 1917, insuring a crop in 1918 of 900 bushels worth $1,700, but that by reason of not being able to prepare the land for wheat the Buckners "cannot now raise a crop on said land of more than $1000 in value."

2. By reason of not having possession of the premises the windows and doors in the house were broken and the cistern filled with rock and rubbish to the defendants' damage in the sum of $100.

3. By reason of not having possession of the premises the Buckners were compelled to haul water a distance of 16 miles for each round trip to their damage in the sum of $100.

4. By reason of not having possession of the premises in the summer of 1917, the Buckners were unable to drill a well, and on that account were com-

pelled to haul water until the summer of 1918 to their damage in the sum of $100.

5. Buckner lost the pasturage on the premises to his damage in the sum of $100. He also lost the straw "that would have been raised on" the land, to his damage in the sum of $35.

6. Relying upon the promise of Dillon to put him in possession of the land, Buckner "purchased a team of horses to farm said premises with" and because of taking care of and furnishing feed for the team he was damaged in the sum of $100.

7. If Buckner had been in possession of the premises he would have built a hog-house and chicken-house, and made an addition to the dwelling-house, so that his wife could have been with him, but because of the condition of the dwelling-house, it was insufficient to accommodate a woman and Buckner was deprived of the society and assistance of his wife to his damage in the sum of $100.

8. If Buckner had been in possession of the premises during the season of 1918, he would have built chicken-houses and hog-houses, and would have been able to have chickens and hogs, and the chickens and hogs would have earned for him at least $100 during 1917.

The answer continues with averments to the effect that "based upon the statement of facts" concerning W. C. Buckner's purchase of the land, Dillon's agreement to oust Van Noy, failure to put W. C. Buckner in possession, and the enumerated eight items of damages, W. C. Buckner commenced an action against Dillon in the Circuit Court for Clackamas County on December 6, 1917, and that afterwards Buckner obtained a judgment against Dillon for $475 as damages and the further sum of $57.20 as costs and disburse-

ments.   The Buckners say in their answer that they
did not pay the interest which accrued and became
due November 18, 1917, for the reason that they had,
as a result of the damages sustained by them, "an
accrued and unpaid account against" Dillon "in
amount more than sufficient to offset and satisfy said
interest."

It is further averred in the answer that after the
alleged maturity of the note, and after Buckner had
begun his action at law in Clackamas County, Dillon
assigned the note and mortgage to Taylor for the
purpose of avoiding Dillon's obligations to Buckner;
and it is further alleged in the answer that Taylor is
not a *bona fide* purchaser in due course before
maturity.

A certified copy of the judgment rendered in
Clackamas County is in evidence; and from this copy
we learn that the judgment against Dillon was
rendered on January 12, 1918.   In the course of the
trial of the instant suit the parties stipulated that
Buckner began the action at law against Dillon in
Clackamas County prior to the assignment of the
note and mortgage to Taylor; and, although the
record is not entirely clear, we understand from it
that Taylor concedes that Buckner prosecuted the
action and obtained a judgment against Dillon "upon
the grounds alleged in the answer" filed in the in-
stant suit.   Aside from the admissions in the plead-
ings, the admissions made by Taylor's attorney in
the course of the trial, the stipulation mentioned,
and the certified copy of the judgment, the record
presented to us contains no evidence or other in-
formation concerning the action prosecuted to judg-
ment in Clackamas County.

The Buckners pleaded the Clackamas County judgment as a counterclaim against Taylor in this suit; and the Buckners are now contending that the trial court erred in refusing to allow such counterclaim. The Circuit Court rendered a decree against the Buckners for the full amount of the note, principal and interest, and for the foreclosure of the mortgage.

AFFIRMED.

For appellants there was a brief prepared and submitted by *Mr. Denton G. Burdick* and *Mr. Max A. Cunning.*

For respondent there was a brief over the names of *Mr. Willis S. Moore* and *Mr. Lewis H. Irving,* with an oral argument by *Mr. Moore.*

HARRIS, J.—The question for decision is whether the defendants can rely upon the judgment against Dillon as a counterclaim to the note in the hands of Taylor.

Recapitulating the happenings in their chronological order they were as follows: On November 18, 1916, Dillon conveyed a tract of land to W. C. Buckner, and the latter, together with his wife, gave a note and mortgage to Dillon. The interest which became due on the note on November 18, 1917, was not paid. On December 6, 1917, W. C. Buckner commenced an action at law against Dillon for damages because of the failure of Dillon to oust Van Noy. On January 5, 1918, Dillon assigned the note and mortgage to Taylor, and the latter promptly notified W. C. Buckner of the assignment. On January 12, 1918, Buckner obtained his judgment against Dillon. On May 2, 1918, Taylor commenced the instant suit.

It is appropriate at this point to say that the evidence shows that Taylor purchased the note and mortgage in good faith for value.

1. The note, it will be remembered, does not contain an acceleration clause, but the mortgage does contain such a clause. If the note had not matured because of the failure to pay accrued interest, then Taylor was a purchaser before maturity, for value, and without notice, and consequently took the instruments free from any equities or counterclaims that the Buckners might have had as against Dillon. For the purposes of the instant case, and in order that the controversy may be viewed in a light most favorable to the defendants, we shall assume, without deciding, that the acceleration clause in the mortgage is self executing, and that upon failure of the Buckners to pay the interest the acceleration clause in the mortgage automatically and of its own force matured the note on November 19, 1917: See 19 R. C. L. 495, 496.

It is not necessary to decide whether all or any of the items upon which the action at law was based were or are properly allowable as damages; but we shall assume, without deciding, that each of those items is and was properly allowable against Dillon because of his failure to oust Van Noy. Nor shall we attempt to decide whether, if this foreclosure suit were prosecuted by Dillon, any or all of these eight items of damages could be pleaded as counterclaims within the meaning of the term "counterclaim" as used in Section 401, Or. L., and as defined by our judicial precedents; but in order that the cause may be placed in a light most favorable to the defendants we shall assume, without deciding, that each of the eight items could be pleaded as a counterclaim, if

Dillon were prosecuting this suit as plaintiff: See, however, *Dove* v. *Hayden,* 5 Or. 501, 502; *Burrage* v. *Bonanza G. & Q. M. Co.,* 12 Or. 169, 173 (6 Pac. 766); *Conn* v. *Conn,* 22 Or. 452, 455 (30 Pac. 230); *Maffett* v. *Thompson,* 32 Or. 546, 551 (52 Pac. 565, 53 Pac. 854); *Le Clare* v. *Thibault,* 41 Or. 601, 606 (69 Pac. 552); *Templeton* v. *Cook,* 69 Or. 313, 317 (138 Pac. 230); *First National Bank* v. *Seaweard,* 78 Or. 567, 580 (152 Pac. 883); *Hanna* v. *Hope,* 86 Or. 303, 309 (168 Pac. 618); *Title I. & T. Co.* v. *Northwestern L. D. Tel. Co.,* 88 Or. 666, 674 (173 Pac. 251); *Gabel* v. *Armstrong,* 88 Or. 84, 90 (171 Pac. 190).

2. Proceeding, as we do for the purpose of this discussion, on the theory that the failure to pay interest automatically matured the note, the conclusion must then be that, when Taylor purchased the note and mortgage, he took a note which was overdue; and it may be added that he knew that the note was overdue, for he admits that at the time of the transfer of the instrument he knew that the interest had not been paid. In this situation all and the most that the Buckners can claim is that they can interpose against Taylor only such defenses, equities, and counterclaims as existed in their favor against Dillon before notice of the assignment: Section 28, Or. L.; *Chung* v. *Stephenson,* 50 Or. 244, 245 (80 Pac. 386); 5 C. J. 962, 963, 978. As already stated, we have assumed, without deciding, that each of the eight items of damages is pleadable as a counterclaim against Taylor as the assignee of the note and mortgage; but this assumption is not equivalent to saying that the counterclaim pleaded by the defendants is available to them.

3. What have the Buckners pleaded as a counterclaim? They have pleaded a judgment against

Dillon. Although the Buckners have explained in their answer that the eight items of damages constituted the basis of the judgment rendered against Dillon, it is manifest that the judgment as such, and not the items of damages, is relied upon as the counterclaim. The claim for damages as to each of the eight items, although unliquidated, was existing at the time of the assignment of the note and mortgage. But this unliquidated claim was made definite and certain when the judgment was rendered against Dillon on January 12, 1918, and when that judgment was rendered the claim for damages was merged, was swallowed up, was drowned and extinguished in the judgment, and lost its vitality, so that it could not thereafter be used either as a cause of action or counterclaim: 23 Cyc. 1108. Moreover, even where the claim before judgment possesses peculiar qualities such peculiar qualities are ofttimes held to disappear when judgment is rendered, and consequently in such instances the judgment stands on the same footing as other judgments: 23 Cyc. 1109. Taylor was not a party to the judgment rendered against Dillon; and therefore the judgment is not binding upon Taylor. Although there may be sporadic adjudications to the contrary, the rule sustained, not only by reason and established legal principles, but also by the overwhelming weight of judicial authority, is that where a claim made by a debtor against an assignor is reduced to a judgment against the assignor pending a suit brought by the assignee against the debtor, neither the claim against the assignor nor the judgment rendered against him is available to the debtor as a counterclaim against the assignee in the absence of some element, legal or equitable, not found in the instant case: *Lowell* v. *Lane,* 33 Barb. (N. Y.)

292; *Rosenfeld & Co.* v. *Solomon,* 61 Misc. Rep. 238
(113 N. Y. Supp. 723); *Lucas* v. *East Stroudsburg
Glass Co.,* 38 Hun, 581; *Silver* v. *Krellman,* 89 App.
Div. 363 (85 N. Y. Supp. 945); *Knight* v. *Rothschild,*
132 App. Div. 274 (117 N. Y. Supp. 26); *Harpstrite*
v. *Vasel,* 3 Bradw. Rep. (Ill. App.) 121; *Mizell* v.
*Moore,* 29 N. C. 255; *Andrews* v. *Varrell,* 46 N. H. 17;
*Runamaker* v. *Cordray,* 54 Ill. 303; see, also, 23 Cyc.
1110; *Redden* v. *First Nat. Bank,* 66 Kan. 747 (71
Pac. 578).

When W. C. Buckner obtained his judgment against
Dillon on January 12, 1918, at that moment the claim
for damages ceased to exist, because it was merged
in the judgment: *Williams* v. *Wilson,* 42 Or. 299 (70
Pac. 1031, 95 Am. St. Rep. 745); *Ryckman* v. *Mane-
rud,* 68 Or. 350, 361 (136 Pac. 826, Ann. Cas. 1915C,
522); 15 R. C. L. 782, 786, 792. Inasmuch as Taylor
was not a party to the judgment, it does not bind
him. Moreover, the judgment as such did not exist
until after the Buckners had knowledge of the assign-
ment. If Taylor had been a party to the judgment,
or if the judgment were binding upon him in this
suit, a different situation might be presented.

The decree is affirmed.                    AFFIRMED.

BURNETT, C. J., and McBRIDE and BENSON, JJ.,
concur.