WILLIAM B. WYMAN, administrator, *vs.* WILLIAM FABENS, administrator.

In an action against the maker of a promissory note, given in 1833, and alleged to be lost or destroyed, the agreed statement of facts set forth that a note in renewal of the original note was given in 1844, for the purpose of preventing the original claim from being barred by the statute of limitations; and that nothing was ever paid on either note. The Gen. Sts. *c.* 118, § 76, provide that a discharge in insolvency shall protect a debtor only from debts founded on a contract made since July 31, 1838. *Held*, that the discharge in insolvency of the defendant was a bar to the action.

CONTRACT by the administrator *de bonis non* of Isaac Wyman against the administrator of Jonathan Brown. Writ dated February 9, 1860. The declaration alleged that Jonathan Brown about 1832 made a promissory note for $210.16, payable on demand to the plaintiff's intestate or order, with interest annually, " a copy of which is not given because said instrument is not in the plaintiff's power, and the same is lost or destroyed, as the

plaintiff believes "; that on March 12, 1844, upon demand of Elizabeth Wyman, who was then the administratrix of Isaac Wyman, Jonathan Brown "promised anew to pay said debt and note and interest thereon by an instrument in writing." Said instrument, a copy of which was annexed to the declaration, was as follows: "March 12, 1844. For value received I promise to pay Mrs. Elizabeth Wyman, administratrix of Isaac Wyman, or order, two hundred and ten dollars and sixteen cents, on demand with interest. Jonathan Brown. Witness, Susan B. Wyman." The answer set up the discharge of Jonathan Brown under the insolvent act. The case was submitted to the judgment of the Superior Court, on an agreed statement of facts, of which the material part is as follows:

"The action is founded upon a promissory note given by the defendant's intestate to the plaintiff's intestate, a copy of which is annexed to the plaintiff's declaration, and which is not outlawed, said note being given in renewal of a renewal of note given by the defendant's intestate to the plaintiff's intestate about the year 1833, said renewals being given for the purpose of preventing the original claim from becoming outlawed; no part of the original note or notes given in renewal has been paid; the original note was given by the defendant's intestate for a claim due by Timothy Brown to the plaintiff's intestate and while the defendant's intestate was administrator of the estate of said Timothy, who died about the year 1832. The defendant's intestate had effects of Timothy come into his hands as administrator, but has not paid any debts of Timothy, or rendered any account of his administration. The defendant's intestate obtained a discharge under the insolvent laws of the Commonwealth about the year 1858. If the debt is not barred by said discharge in insolvency, then judgment is to be entered for the plaintiff; but if it is so discharged, then judgment is to be entered for the defendant."

The Superior Court rendered judgment for the defendant, and the plaintiff appealed.

*C. P. Thompson*, for the plaintiff.

*W. D. Northend*, for the defendant.

WELLS, J. The single question before us is whether the demand in suit is barred by the defendant's discharge in insolvency.

It is a personal obligation, and not within the provisions of the St. of 1844, *c.* 178, § 3, Gen. Sts. *c.* 118, § 79, excepting debts created by defalcation as trustee or administrator.

The only ground, relied on at the argument, to avoid the bar, is that the debt was originally contracted in 1833; the present note having been taken in renewal, and not as payment of those previously held. The debtor is discharged only from such debts as are "founded on any contract made by him subsequently" to the last day of July 1838. Gen. Sts. *c.* 118, § 76. St. 1838, *c.* 163, § 7.

If the action were upon the note now held by the plaintiff, dated in 1844, the discharge would be a complete bar, according to the principle of the decisions in *Rindge* v. *Breck*, 10 Cush. 43; *Bangs* v. *Watson*, 9 Gray, 211; *Pierce* v. *Eaton*, 11 Gray, 398. The plaintiff however, by his declaration, counts upon the original note, made in 1832 or 1833, averring, as a reason for not annexing a copy, that it "is not in the plaintiff's power, and the same is lost or destroyed, as the plaintiff believes;" and relying upon the note which he holds merely as a new promise to take the case out of the statute of limitations.

It is agreed that the original note has never been paid, and that the note now held was given merely in renewal thereof, or as a second renewal, "for the purpose of preventing the original claim from becoming outlawed." The agreed statement does not disclose whether the original note was retained by the payee and lost, or was given up to be destroyed upon receipt of the note for renewal; and it is perhaps immaterial for the purposes of this decision, in the view we take of the case.

A renewal by substitution of a new contract, complete in itself, in place of one previously existing, although upon the same consideration and by way of continuing the liability, is nevertheless essentially different from a new promise to perform the previous contract. The difference is perhaps sufficiently indicated by the very terms of the proposition above stated.

Ordinarily the new contract supersedes the old, so that there is no longer any personal liability of the party upon it; although it may continue to have force for the purpose of sustaining collateral rights. It is rather by regarding the debt as subsisting independently of the particular instrument by which it is manifested for the time being, that such collateral rights are preserved. Thus where a bond with surety was given for the payment of a balance due on account, and subsequently a note taken, for the same balance, payable at the time named in the condition of the bond, the party was allowed to recover on the bond by showing that the note was not intended as payment or discharge of the debt due on the account. *Curtis* v. *Hubbard*, 9 Met. 322. *Butts* v. *Dean*, 2 Met. 76. But in a similar case, where the maturity of the note was later than the time fixed in the bond for payment, it was held, as matter of law, that the sureties were discharged by this extension of time; and this on the ground that the note superseded the original contract and suspended all right of action upon it, between the principals. *Appleton* v. *Parker*, 15 Gray, 173.

A judgment is an absolute merger of a debt by simple contract, so that no action can afterwards be maintained upon the original promise. If recovered after the first publication of notice of issuing the warrant, it will defeat the proof of the original debt. *Sampson* v. *Clark*, 2 Cush. 173. *Bradford* v. *Rice*, 102 Mass. 472. If recovered, since the statute of insolvency, upon a debt contracted before, it will bring the debt within the provisions of that statute so as to be subject to be discharged. *Pierce* v. *Eaton*, 11 Gray, 398. But the debt is not thereby extinguished; and its identity may be proved for the purpose of retaining and enforcing collateral rights, held for its security. If, however, those collateral rights depend upon or are incident to the creditor's present right of action against his debtor, they will be lost or modified by the merger. The effect of such merger is discussed in the recent case of *Byers* v. *Franklin Coal Co.* 106 Mass. 131 · and the principles there stated are applicable, by analogy, to cases like the present.

There is a class of cases, distinguishable from this, where, several persons being liable upon the same contract, the note of one of them or of an agent is taken for some purpose of temporary use or convenience, or by reason of concealment, fraud or mistake; and the original contract is held to remain unaffected thereby. *Melledge* v. *Boston Iron Co.* 5 Cush. 158. But, in these, the original contract is maintained by treating the note, thus given, as inoperative. If the holder, with knowledge of all the facts, chooses to avail himself of the note, beyond the temporary purpose for which it was given, or to treat it as a valid and absolute contract, by negotiating it or suing upon it, he loses the right to fall back upon the original contract. *Hooker* v. *Hubbard*, 97 Mass. 175. *Dewey* v. *Bell*, 5 Allen, 165.

This case must be distinguished also from one where the new note is given and received as collateral security only.

The new note, in this case, represents the entire contract and obligation between the parties. It was given and accepted for that purpose; and there is no fact appearing which is sufficient to prevent it from having the effect of payment and satisfaction of the previous note. That it was a renewal of the former note is entirely consistent with this effect. That it was given " for the purpose of preventing the original claim from becoming outlawed," is equally consistent. It accomplishes that purpose most effectually by superseding the original claim and thus avoiding all questions as to the statute of limitations. *Sumner* v. *Sumner*, 1 Met. 394. We understand the agreement that the original notes have not been paid, to be merely that they have not been paid otherwise than by the renewal set forth.

The precise question involved in this case was presented and discussed in *Foster* v. *Shaw*, 2 Gray, 148; with this difference, that the new promise, there relied on, was held to be only an acknowledgment of the previously existing debt, which avoided the bar of the statute of limitations, and not an independent contract by way of renewal; and the action was maintained upon the original contract. It is significant that the argument upon both sides and the opinion of the court all proceed upon the as-

sumption that the question of the effect of the discharge turned upon that distinction.

If the plaintiff were compelled to rely upon the original claim, and avoid the defence of the statute of limitations, he would meet with the difficulty that, in order to make the new note answer as an acknowledgment of liability upon some other note, resort must be had to parol evidence to vary its express terms.

We are satisfied therefore that the plaintiff has no remaining cause of action upon the original notes; that his only claim is founded on a contract made by the debtor subsequently to 1838, to wit, the note of 1844; and that that claim is barred by the discharge in insolvency.

The decision in *Tucker* v. *Drake*, 11 Allen, 145, is not inconsistent with this conclusion. That case recognizes the distinction, to which we have alluded, between the debt and the instrument which is the evidence of its present existence; between the personal claim upon the debtor and collateral rights or liens. It was a question of exemption, under a statute which contained a proviso that no property held as a homestead should be exempt from levy " for any debt contracted previous to " its passage. It was held that a debt, contracted before the statute, but continued by renewal note after its passage, was still the same debt, and came within the purpose and meaning of the terms of the proviso. The decision put the case upon the same ground as that of a mortgage, guaranty or other collateral security.

The test to which we are brought by the two decisions is in point of interpretation. It requires that a debt " founded on a contract made " subsequently to an event, may also be shown to have been " contracted " previously thereto. The former expression, being used in defining the power of the court over the debt, has always been held to refer to the contract upon which the debt for the time being rests; while the latter refers to the origin of the liability. Each is interpreted in view of its purpose and connection.                    *Judgment for the defendant.*