J. EDWARD FROST *vs.* WALTER S. THOMPSON & others, trustees.

Suffolk. December 5, 1913. — November 25, 1914.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, SHELDON, DE COURCY, & CROSBY, JJ.

*Voluntary Association. Partnership. Trust. Judgment. Merger. Election. Equity Jurisdiction,* To reach and apply property not attachable at law.

Where a declaration of trust and by-laws, providing for the holding of property by trustees for the benefit of the owners of assignable certificates representing the beneficial interest in the property, provide that the shareholders representing two thirds in value of outstanding shares shall have power to remove any or all of the trustees at any time without assigning any cause, to fill any vacancy so caused, to terminate the trust at any time previous to the specified limitation and to terminate it by compelling the trustees to convey the trust property to new trustees upon a different trust or to a corporation; and further provide that a majority of the shareholders at any time may amend the declaration of trust and at any annual or special meeting may amend the by-laws, the voluntary association thus formed is a partnership and not a trust.

Accordingly, where the declaration of trust creating such an association provides that "all contracts and engagements entered into by the trustees, and all conveyances and instruments executed by" them shall be in their respective names, shall provide against any personal liability on their part, and shall stipulate that only property in their hands as trustees shall be answerable therefor, and the by-laws provide that the treasurer of the association shall "make, sign, endorse, and accept for and in the name and behalf of the company, promissory notes . . . in the regular course of its business," a note, given for money advanced for the association's benefit and signed by the treasurer with the name of the association followed by his name and official designation, is not an obligation of the trustees executed in accordance with the power conferred upon them, but is a note of the partnership executed by their agent pursuant to their by-laws; and a suit in equity cannot be maintained to establish the debt as a debt of the trustees incurred in the performance of their duty as trustees and to cause it to be satisfied out of the trust estate.

Statement by RUGG, C. J., of the doctrine of merger by judgment and discussion of its limitations.

*It seems,* that, if the holder of a note signed by trustees of a voluntary association in the performance of their duty in the management of the trust property brings an action at law against them and pursues it to judgment, his right afterwards to bring a suit in equity for satisfaction of his claim out of the trust estate is not merged in the judgment in the action at law, which can run against the defendants therein only as individuals.

*Whether,* where the holder of a promissory note of a voluntary association, which is managed by trustees who hold all its property but which is a partnership, the note being signed in the name of the association by its treasurer who was authorized to sign it thus, brings an action at law upon the note against the trustees and recovers judgment therein, and it appears that some of the defend-

ants in that action are shareholders in the association, he is precluded by such judgment from maintaining a suit in equity against all the shareholders as partners to reach and apply partnership assets in payment of the note as a partnership debt; *and whether*, and *in what manner*, if he is so precluded, he can overcome that obstacle, are questions which were not decided in this suit in equity which was prosecuted wrongly on the theory that the note was a note of the trustees executed in the course of their duty as trustees.

The holder of a promissory note of a voluntary association, which is managed by trustees who hold all its property but which is a partnership, the note being signed in the name of the association by its treasurer within the scope of his authority, by bringing an action at law against the trustees as makers of the note and pursuing that action to a judgment, does not make a binding election to pursue the trustees personally only and is not thereby precluded from bringing a suit in equity against all the shareholders as partners to establish the debt and to have applied in satisfaction of it partnership property which cannot be attached at law.

The interest of a voluntary association, which is a partnership, in real estate in Cuba held and managed for it by trustees under a declaration of trust, where it appears that the trustees in accordance with their duties have made contracts with a large number of persons to convey portions of the real estate to the respective holders of the contracts when such holders have completed a series of instalment payments therefor, is not so peculiar in its nature that it cannot be sold, in a suit to reach and apply such interest in satisfaction of a debt of the association, by the means open to a court of equity.

BILL IN EQUITY, filed in the Superior Court on April 6, 1912, and afterwards amended, against Walter S. Thompson, Daniel N. Norton, Frank Boyden, George L. Dunning, Frank E. Morris, William Carleton, alleged in the bill and admitted in the answer to be trustees under a declaration of trust for a voluntary association called the Buena Vista Fruit Company, and (by amendment) against Horace W. Taylor, Herbert W. Hersey and George B. Graves, "and all other shareholders or beneficiaries" under that declaration of trust, who were alleged to be too numerous to name in the bill, the three last named defendants with the defendants Thompson, Dunning and Carleton, who also were shareholders or beneficiaries, being alleged to represent fairly the members of the class of shareholders or beneficiaries. The purpose of the bill was to have the promissory note described in the opinion established as a debt of the defendants to the plaintiff, and to reach and apply in satisfaction of that debt rights of the defendants in certain real estate in Cuba which they held subject to certain contracts of purchase with the shareholders or beneficiaries.

In the Superior Court the suit was heard by *Hardy*, J., who filed a memorandum stating his findings. Material findings made

by him are stated in the opinion. The case later was referred to Edwin N. Hill, Esquire, as master, for a report as to the rights to real estate in Cuba held by the defendants as trustees.

As to the defendants' holdings of real estate in Cuba and the contracts of sale of portions thereof, the master found "that the trustees were, at the time of bringing this action, and are now, the owners of about thirteen hundred and seventy acres of land situate in . . . [Cuba] . . . with the title in said trustees, subject, however, to the terms and obligations contained in a large number of contracts for the sale of said land entered into at various times. . . . About ten hundred and fifty acres are now under cultivation by the company, having been planted mainly with grape fruit and orange trees. This tract of land is divided into blocks of twenty acres each, which are again subdivided into one acre lots. Sufficient land has been taken out for the laying and construction of streets which have been completed and extend over the whole tract. The company owns no other lands in Cuba and have no options or contracts or leases for the purchase of land.

"Since 1907 the operations of the company through its trustees, relative to the tract of land mentioned, are shown by contracts of sale made with numerous individuals for acreage specified in each contract. . . . By this method they contracted to sell fourteen hundred and fifty-one acres prior to bringing the bill of complaint. Certain contracts have been cancelled from time to time in accordance with the provisions therein contained covering five hundred and thirty-nine acres, exclusive of said fourteen hundred and fifty-one acres. The contracts do not describe any particular lot of land except in a very few instances where lots by number in particular blocks are specified. The total number, so mentioned, is about one hundred and eighteen acres. . . .

"The scheme of the company in selling these lots of land is to contract for the sale of a certain quantity of citrus fruit land stated in each contract which the company agrees to set aside in the tract owned by it, and to keep under good care and cultivation for a period of ten years from the time of planting. The purchasing party is obligated to pay a certain amount of money down and a further stipulated sum monthly or yearly for the first four years from the date of the contract, after which time all

cash payments shall end and all further payments required to make up the entire purchase price of the number of acres mentioned in the contract for the remaining six years of the ten year period is to be paid from the net income derived from the sale of citrus fruits raised upon the land, after deducting the expense of harvesting, packing, shipping and selling the fruit. The amount of the yearly or monthly payments for this last period of six years to be taken from the amount realized from the sale of the fruit and to be paid to the company, is fixed in each contract. All of the fruit raised upon the land is to be the property of the contracting party and the net income received from the sale of fruit, after deducting the cost of harvesting, etc., and the monthly payments, must be turned over by the company to the owner. At the end of four years when the full four year payment has been completed, the company is to execute, upon request, a deed of the land called for in the contract, subject to the conditions of the contract relating to the period of ten years as to the care and cultivation of the land, and the expense of taking care of and selling the fruit.

"It is further provided in the contract that in case of a default in payments for a certain period, after they become due, the contract may be cancelled by the company and seventy-five per cent of the amount hitherto paid applied to the purchase of one or more acres of land to become the property of the prospective purchaser, subject to the terms of the contract, and the remaining twenty-five per cent to be forfeited to the company.

"It is also agreed that the purchaser may have the privilege of cancelling the contract by giving six months' notice and in such event is to receive seventy-five per cent of the amount previously paid, in cash or land at the purchaser's option, the remaining twenty-five per cent of this sum to be forfeited to the company."

The declaration of trust creating the Buena Vista Fruit Company was dated December 27, 1907. Article XI of that instrument, which is quoted in part in the opinion, was in full as follows: "Article XI. All contracts and engagements entered into by the Trustees and all conveyances and instruments executed by said Trustees shall be in their respective names as Trustees, and shall provide against any personal liability on the part of the Trustees, and stipulate that no other property shall be answer-

able than the property in the hands of the Trustees." Neither
the declaration of trust nor the by-laws of the company provided
for any further limitation upon the liability of the shareholders.

After the confirmation of the master's report, a final decree
for the plaintiff was entered by order of the trial judge. The
defendants appealed.

The case was argued at the bar in December, 1913, before
*Rugg,* C. J., *Loring, Braley, & De Courcy,* JJ., and afterwards
was submitted on briefs to all the justices.

*H. T. Richardson,* for the defendants.

*F. C. Allen,* (*R. E. Smith* with him,) for the plaintiff.

RUGG, C. J. This is a suit in equity wherein the plaintiff
seeks to recover from the defendants the balance due on a promis-
sory note signed, "The Buena Vista Fruit Co., G. L. Dunning,
Treasurer," and to obtain further relief. The Buena Vista Fruit
Company is a voluntary association of numerous individuals for
a business venture. The title to its property and its management
are vested in trustees. The interests of the individuals composing
the association are represented by assignable certificates resem-
bling in form shares of stock. The original defendants in this suit
were six persons who were the trustees of the association when
the bill was filed. Later, all the shareholders in the association
were made parties defendant on an allegation, admittedly true,
that they constituted a class too numerous to be joined individ-
ually, and that they were properly represented by certain named
defendants. A decree was entered in favor of the plaintiff, from
which the defendants appealed. The case is before us on facts
found by a judge of the Superior Court.

Although not stated plainly, it seems fairly inferable that the
note was issued in consideration of money advanced, of which the
association received the benefit. It further is stated that the pur-
pose of the bill "is to satisfy the obligation that has been incurred
by the respondents herein in their representative capacity out of
an estate to which such trustees or such defendants could resort
for an indemnity." No exception was taken to this statement
and the arguments in this court have proceeded on the assumption
that this is the purpose of the suit.

In order to entitle him to relief on the ground on which the bill
is brought, the plaintiff must prove that the note was made by

the trustees of the Buena Vista Fruit Company in the course of their duty as such. Whether the English doctrine in this connection (as to which see *Mason* v. *Pomeroy,* 151 Mass. 164; *Dowse* v. *Gorton,* [1891] A. C. 190; *Newton* v. *Rolfe,* [1902] 1 Ch. 342, 345; *In re Johnson,* 15 Ch. D. 548, 553, 555; *Dunham* v. *Blood,* 207 Mass. 512, 514; *King* v. *Stowell,* 211 Mass. 246), or the doctrine which has obtained in some American States (as to which see *Wylly* v. *Collins & Co.* 9 Ga. 223; *Cater* v. *Eveleigh,* 4 Desaus. 19; *Manderson's appeal,* 113 Penn. St. 631; *Willis* v. *Sharp,* 113 N. Y. 586) be the true doctrine, the basis of recovery is the fact that the plaintiff holds an obligation incurred by trustees in the course of their duty in administering the trust fund out of which satisfaction is sought by the plaintiff. The difference between these two doctrines is that under the English rule the plaintiff's right to obtain satisfaction of his debt is worked out through the trustees' right to indemnity, and hence depends upon the state of the account between the trustees and the trust fund; while under the other rule the right of the plaintiff is independent of the state of this account.

The note here in suit is not a note made by the trustees in the performance of their duties as trustees. That conclusion follows from an examination of the nature of the Buena Vista Fruit Company. A declaration of trust or other instrument providing for the holding of property by trustees for the benefit of the owners of assignable certificates representing the beneficial interest in the property may create a trust or it may create a partnership. Whether it is the one or the other depends upon the way in which the trustees are to conduct the affairs committed to their charge. If they act as principals and are free from the control of the certificate holders, a trust is created; but if they are subject to the control of the certificate holders, it is a partnership. That was explained at length in *Williams* v. *Milton,* 215 Mass. 1. Tested by the principles there laid down, the Buena Vista Fruit Company is a partnership and not a trust. It is a voluntary association organized under two instruments, one called a "declaration of trust" and the other, "by-laws." These two instruments provide that the shareholders representing two thirds in value of outstanding shares have power to remove either or all of the trustees at any time, without assigning any cause, and to appoint

others to fill the vacancy; to terminate the trust at any time earlier than that limited for its duration in the declaration of trust, and to terminate it by requiring conveyance of the property to other trustees upon new trusts, or to a corporation. A majority of the shareholders at any time by vote may amend the declaration of trust. The by-laws may be "altered, amended or repealed" by vote of the majority of the shareholders "at any annual or special meeting of the . . . shareholders." These provisions demonstrate that this association is a partnership and not a trust. In recognition of the fact that it is a partnership and not a trust, article 3 of the by-laws provides that the treasurer shall "make, sign, endorse, and accept for and in the name and behalf of the company, promissory notes, drafts, and checks in the regular course of its business." The note in suit was made in accordance with this by-law. It is not signed by the trustees, but by the treasurer of the association in its name. Article XI of the declaration of trust provides that "All contracts and engagements entered into by the trustees and all conveyances and instruments executed by" the trustees, shall be in the respective names of trustees and shall provide against any personal liability on their part, and shall stipulate that no other property shall be answerable than the property in the hands of trustees. Plainly the note in suit is not the obligation of the trustees executed in accordance with the power thus conferred, but the note of the company executed by its agent pursuant to its by-laws. Neither in fact nor in legal contemplation is it the note of the trustees. It follows that the plaintiff has not brought his case within the principle of law on which his bill is framed and on which he recovered in the Superior Court, viz., that when a trustee has incurred an obligation in conducting the trust, the person to whom that obligation is due can satisfy it out of the trust estate. Hence, the decree in favor of the plaintiff was wrong, founded as it was upon that principle of law.

The defendants contend that no suit or action can be maintained on the note because that has become merged in a judgment. This contention rests on the fact that before the bringing of this suit the plaintiff brought an action at law on this note against the persons who were trustees when the note was dated and judgment has been entered against five of them (as stated in the

jūdge's memorandum) "personally instead of as trustees." Of course no judgment could have been entered against them as trustees and the only legally possible judgment must run against them as individuals. *Mayberry* v. *Sprague*, 207 Mass. 508. Doubtless that judgment was rendered on the same theory on which a decree was entered in favor of the plaintiff in the present suit in the Superior Court, namely, that the Buena Vista Fruit Company was a trust and not a partnership and that therefore the note was in contemplation of law the note of the trustees.

The doctrine of merger is that a cause of action, when reduced to a judgment, has ceased to exist as an independent liability, and has changed its nature and is transmuted into the obligation created by the judgment, which is different in kind and essential characteristics from the initial cause of action. It has been said that "A judgment is an absolute merger of a debt by simple contract, so that no action can afterwards be maintained upon the original promise." Wells, J., in *Wyman* v. *Fabens*, 111 Mass. 77, 80. *French* v. *Neal*, 24 Pick. 55, 61. *Bangs* v. *Watson*, 9 Gray, 211. *Pierce* v. *Eaton*, 11 Gray, 398. *Wolcott* v. *Hodge*, 15 Gray, 547. *Ward* v. *Johnson*, 13 Mass. 148. *Connors* v. *Holden*, 152 Mass. 598. *Mason* v. *Eldred*, 6 Wall. 231. *Schuler* v. *Israel*, 120 U. S. 506, 509. *Coles* v. *McKenna*, 51 Vroom, 48.

The doctrine of merger, like *res judicata*, operates only between parties and their privies. It does not affect strangers to the original proceeding and is not available as a bar in their favor. This is the rule stated in the text books. Black on Judgments, § 673. · 1 Freeman on Judgments, § 215. 23 Cyc. 1111, 1206. 24 Am. & Eng. Encyc. of Law, (2d ed.) 717. 13 Laws of England, by Lord Halsbury, § 478. It is supported by the authorities. *School District No.* 34 v. *Thompson*, 51 Neb. 857. *Wolf* v. *Wyeth*, 11 S. & R. 149. *Atlantic Dock Co.* v. *Mayor & Aldermen of New York*, 53 N. Y. 64. *Ellis* v. *State*, 2 Ind. 262. *United States* v. *Cushman*, 2 Sumn. 426, 437. *Cheveront & Co.* v. *Textor*, 53 Md. 295, 308. *Harrison* v. *Remington Paper Co.* 72 C. C. A. 405, 414. *Randall* v. *Smith*, 1 Denio, 212. See also *Low* v. *Low*, 177 Mass. 306. Apart from authority and on reason this conclusion is sound. It is only in proceedings *in rem* that the judgment of a court has been regarded as affecting those who are not parties or privies. Merger is a doctrine which

has been extended "very far" in this Commonwealth, and which "has not received the approval of the Supreme Court of the United States" and of other courts of respectable authority. *Attorney General* v. *American Legion of Honor*, 196 Mass. 151, 158, and cases cited. In the course of the judgment in *Beckett* v. *Ramsdale*, 31 Ch. D. 177, where, after full discussion, it was held by the Court of Appeal that recovery of judgment against a surviving partner did not bar an action against the estate of a deceased partner, the doctrine was referred to by Lord Bowen as one of "fierce severity."

It does not affect liabilities collateral or subsidiary to the original cause of action and yet separable from it, for example, like that of surety. As was said by Holmes, J., in *Vanuxem* v. *Burr*, 151 Mass. 386, 388, "Instances are too numerous and familiar to need extended mention, where the mere recovery of a judgment is held no bar to another action, although the satisfaction of it would be. . . . This principle is applied, not only to actions against different parties, such as the maker and indorser of a note, or joint tortfeasors, but to actions against the same individual when he has given different obligations in respect of what is in substance the same debt." *Byers* v. *Franklin Coal Co.* 106 Mass. 131, 136, 137. *Gilmore* v. *Carr*, 2 Mass. 171. *Porter* v. *Ingraham*, 10 Mass. 88. *Ward* v. *Johnson*, 13 Mass. 148. *Campbell* v. *Phelps*, 1 Pick. 62. *New York Land Improvement Co.* v. *Chapman*, 118 N. Y. 288, 296.

A further limitation of the doctrine is that it does not apply unless the action was brought against the party defendant in the same capacity as was the earlier action. In this respect also it is like *res judicata*. *First National Bank of Amsterdam* v. *Shuler*, 153 N. Y. 163, 173. *Troxell* v. *Delaware, Lackawanna & Western Railroad*, 227 U. S. 434. *Lander* v. *Arno*, 65 Maine, 26. *McBurnie* v. *Seaton*, 111 Ind. 56. *Dibert* v. *D'Arcy*, 248 Mo. 617, 661.

The doctrine of merger, therefore, would not prevent the relief which was granted to the plaintiff in the Superior Court, if the note had been signed by the trustees of the Fruit Company. The holder of a personal obligation incurred by trustees in the performance of their duty in the management of trust property, may pursue both his rights on the note against the trustees and his right to satisfaction out of the trust estate.

But a different situation is presented in the case at bar. It appears from the record that three of the five trustees against whom that judgment was rendered, namely, Thompson, Dunning and Carleton, are shareholders in the association. Whether they were shareholders at the date of the note and of the writ in the action at law and at the time of the rendition of the judgment does not appear on this record. However that may be, the plaintiff has recovered judgment on the note against three who now are shareholders on the ground that they were makers of the note. It is plain from what has been said as to merger that, if none of the trustees against whom the judgment has been rendered had been shareholders, the judgment would not be an obstacle to relief in this suit. But difficulty is presented by the fact that the plaintiff already has secured judgment against three of the shareholders, not on the ground that they are shareholders, but on the ground that they as trustees were makers of the note. Whether that judgment obtained on that ground stands in the way of maintaining a bill, against all the shareholders as partners, or, to reach and apply partnership assets in payment of the note as a partnership debt; and, if it does, whether, if at all, and in what manner, it can be removed, are questions which have not been argued and upon which we express no opinion.

The earlier action at law against the trustees was not an election to hold them to the exclusion of the trust estate. The two positions are not inconsistent, or, if inconsistent, it is not a defense open to the defendants. *Holman* v. *Updike,* 208 Mass. 466, and like cases, do not apply. The rule of election allows the simultaneous employment of remedies not mutually repugnant, looking toward the satisfaction of a single claim. *Connihan* v. *Thompson,* 111 Mass. 270. *Snow* v. *Alley,* 156 Mass. 193. *Miller* v. *Hyde,* 161 Mass. 472. *Hewitt* v. *Hayes,* 205 Mass. 356, 363. *Corbett* v. *Boston & Maine Railroad, ante,* 351. Indeed, the doctrine of election has no appropriate place upon this branch of the case.

The property of the association is not so peculiar in its nature that it cannot be sold by the means open to a court of equity. *Alexander* v. *McPeck,* 189 Mass. 34. *Biggert* v. *Straub,* 193 Mass. 77. *Clarke* v. *Fay,* 205 Mass. 228, 236. Sale of the title of the trustees would not affect the rights of purchasers of interests from the trustees.

If the plaintiff wishes to amend this bill so as to convert it into a bill to reach and apply in payment of this partnership debt property which cannot be attached at law, or to make other appropriate amendments, he ought to be allowed to do so. If he does not wish to amend this bill, he ought to be at liberty to bring a new bill on that ground or to bring an action or suit to enforce the note as a partnership note of the Buena Vista Fruit Company, and the decree should be made without prejudice to such action on his part.

*Decree reversed.*