(No. 5402.   June 19, 1930.)

M. H. WOODS, Assignee of the COLUMBIA TRUST COM-
PANY, as Trustee, Appellant, v. FRANK L. LOCKE
and SARAH LOCKE, His Wife, and ROBERT DIE-
TRICH, Respondents.

[289 Pac. 610.]

Wm. Story, Jr., W. J. Lamme and Peterson, Baum &
Clark, for Appellant.

G. F. Hansbrough, for Respondents.

LEE, J.—September 1, 1910, defendant and respondent, Frank L. Locke, having applied to the state of Idaho to purchase the SW. corner of Sec. 24, T. 6 N., R. 29 E., B. M., in Fremont county entered into an agreement with Blaine County Irrigation Company to purchase a water right consisting of 160 shares of stock in the Blaine County Canal Company, to be dedicated to said lands. The consideration was to be paid in ten deferred, annual instalments; and respondent agreed to assign and transfer to the vendor as security the shares aforesaid, and further agreed that upon default in any instalment the irrigation company might declare the entire purchase price due and payable, and proceed to collect the same and enforce any lien it might have upon the water right evidenced by the stock aforesaid or upon the land to which it was dedicated.

Later, the Blaine County Investment Company succeeded to all the rights and interests of the irrigation company; and, a dispute having arisen between the last-mentioned corporation and respondent Locke as to the amount then due and owing on the purchase price, on July 1, 1916, a further contract was entered into by the investment company and respondent, whereby they agreed, *inter alia,* upon the correct amount then due and owing. The investment company in turn assigned to the Columbia Trust Company, as trustee, all its right, title and interest in and to the agreement between itself and Locke. Locke failed to comply with the terms of the last-mentioned contract. The trustee declared the balance of the purchase price due and payable, and commenced suit to foreclose on the lands and water stock. Judgment of foreclosure in favor of the trustee in the sum of $3,312 and costs was entered September 30, 1919.

The present action is based on this judgment. Plaintiff and appellant, M. H. Woods, assignee of the Columbia Trust Company, after setting forth the above enumerated details, plead that subsequent to the entry of judgment, and

in December, 1919, respondents, Locke and wife, entered into an agreement of compromise and settlement, whereby they agreed to make, and the trust company agreed to accept, payment of "the indebtedness so found and adjudged to be due and owing" in seven fixed, annual instalments, each deferred instalment bearing six per cent interest; that if, by reason of climatic conditions, Locke should receive less than three-fourths of an acre-foot of water for each acre under cultivation during the year 1920, the December instalment of that year should be extended to December, 1921, and the instalment of December, 1922, similarly extended to December, 1923; that, should default be made in any instalment, the trustee should have the right to declare the entire indebtedness "so found and adjudged to be due and owing to it from the said Locke to be immediately due and payable, and to proceed with the sale of the interest of the said defendants in said lands and all the water rights appurtenant thereto, represented by the shares of stock, as provided in the foreclosure decree"; that thereafter Locke and his wife sold and conveyed all their right, title and interest in the land and shares of stock to defendant and respondent, Robert Dietrich, the present owner thereof, subject to the lien thereon so adjudged and decreed to exist in favor af the Trust Company, for the unpaid purchase price of said stock; that, since the entry of the judgment aforesaid, Dietrich or Locke have made upon the principal and interest of the indebtedness "so adjudged to be due and owing" seven successive annual payments, leaving a balance of $900 and interest, after deducting the last payment made November 28, 1925. Plaintiff further plead that by making the payments aforesaid defendants-respondents had tolled the statute of limitations and had estopped themselves to plead it by entering into and performing a part of the compromise agreement aforesaid. Upon this contention, appellant prayed that the former judgment and decree be revived and the property sold pursuant thereto.

Defendants and respondents answered, admitting the two contracts of September, 1910, and July, 1916, specifically

denying that they ever entered into any agreement of compromise and settlement of the judgment, or ever made any payments thereon, and plead that after said judgment was entered, the Lockes contracted to sell to respondent, Dietrich, said lands and water rights upon condition that the Blaine County Investment Company, successor of the irrigation company, would "continue in force" the contracts aforesaid, permitting Dietrich to take them over, and make payments thereunder, "as fully as if no suit had been brought or judgment obtained thereon." They averred that appellant approved the condition, agreed thereto as agent of the Columbia Trust Company, and further agreed that, if Dietrich would make a substantial cash payment, and continue to make payments under the contracts, the Trust Company would look to Dietrich and release the Lockes from further liability. Under this alleged agreement they plead that they have paid $3,240.40, and that by reason thereof "the said judgment and judgment indebtedness has been fully paid and satisfied." They plead the statute of limitations and asked that the petition to revive be dismissed.

It will be noted that there were several issues clearly drawn, especially appellant's claim of a compromise settlement with subsequent part performance and defendant's claim of a new agreement imposing no liability under the judgment. The cause was tried without a jury, and the court entered judgment dismissing appellant's petition, after making three adverse findings, to wit:

"VI. That the plaintiff has wholly failed to establish by a preponderance of the evidence, that the plaintiff or its agent or assignee, entered into an agreement with Frank L. Locke and Sarah Locke his wife, for the extension of the judgment in question as alleged or at all."

"VII. That the plaintiff and its assignee, M. H. Woods, have wholly failed to establish by the evidence that Robert Dietrich, the subsequent purchaser of said land and water right, ever made any agreement with plaintiff or its assignee, M. H. Woods, or with anyone else for the extension of said judgment or that he had any knowledge whatever

of any such agreement having been made by said Lockes or anyone else.''

"VIII. The Court further finds that the said Frank L. Locke and Sarah Locke, his wife, and Robert Dietrich, nor either of them, made any agreement for the extension of said judgment, and thereby estopped themselves from pleading the bar of the statute of limitations, to wit: Section 6608 of the Compiled Statutes of Idaho.''

From these findings, the trial court concluded ''that respondent, Dietrich, is the owner in fee of said above described land and water right, and is in possession thereof,'' and ''that defendants are entitled to a judgment of this Court against M. H. Woods and the Columbia Trust Company, his assignor, dismissing said action as prayed for in their answer.'' ·

■ Appellant assigns as error the failure of the trial court to make findings upon the material issues raised by the pleadings. A glance at the findings cited shows that they are wholly insufficient. (*Pittock v. Pittock*, 15 Ida. 426, 431, 98 Pac. 719.) Here were payments admittedly made through a series of years. What debt were they made on? Respondents plead an agreement absolving the Lockes and holding Dietrich. What is the truth of it? Respondents may contend that the matter is of no moment. But it becomes very material when the law is applied to the facts undisputed in the record. These facts are that the two first contracts were reduced to a judgment against the Lockes September 30, 1919, and that respondents thereafter through a series of years concluding with 1925, made payments under the terms of these selfsame contracts which they insist ''were continued in force'' by appellant and his predecessors. What sort of a situation is this? When a contract has become merged in a valid judgment, all possibility of its revival is irretrievably lost, as Carlyle would say, ''clean gone,'' its nostrils forever sealed to the breath of life. It has ''ceased to exist as an independent liability, and has changed its nature and become transmuted into the obligation created by the judgment.'' (*Frost v. Thompson*,

492

219 Mass. 360, 106 N. E. 1009, 1011; *Rossiter v. Merriman,* 80 Kan. 739, 104 Pac. 858, 24 L. R. A., N. S., 1095; *Taylor v. Buckner,* 100 Or. 75, 196 Pac. 839; *Vide: Cressler v. Brown,* 79 Okl. 170, 192 Pac. 417, 422.) "All is merged into the judgment. The cause of action is destroyed in its entirety. The cause of action is terminated, irrespective of the legal propositions pleaded and considered by the Court rendering the judgment."

When respondents argue that they were paying under the old contracts, they admit that they were not paying under new contracts but under a new agreement permitting the old contracts "to continue in force." Assuredly, they were paying on one debt and one alone. There could not be a debt under the old contracts, separate and apart from the debt slumbering in the judgment. Respondents' more logical position would have been to assert an absolutely new contract employing the terms of the old contracts merely as a measuring rod. Such a contract would have had a sound basis, that of the moral obligation to pay the old debt never extinguished but merely lulled by a statute of repose. However, such a new contract would, under the admitted facts, lend respondent small condolence. They have not kept up the payments under any contract, old or new. And they say appellant's remedy if any he has, is to sue for breach of the old contract No. 37, now revivified into a new and original No. 37.

True it is that there may be a valid agreement to satisfy or release a judgment, but, as is observed in 34 C. J. 701, par. 1083, "If the consideration is already vested, the agreement operates as a satisfaction of the judgment, but, if the contract is executory, there is no release of the judgment until it is performed: the debtor is bound to perform its conditions punctually and fully, in default of which the creditor is remitted to his original remedy under the judgment." This would effectually dispose of the contention that in the instant case "the judgment was satisfied by the new contract."

■ There but remains a discussion of the plea of the statute of limitations. C. S. 6631 as amended provides:

"No acknowledgment or promise is sufficient evidence of a new or continuing contract by which to take the case out of the operation of this title, unless the same is contained in some writing, signed by the party to be charged thereby; but any payment of principal or interest is equivalent to a new promise in writing, duly signed, to pay the residue of the debt."

Respondents urge that, since a judgment is not a contract, the statute has no application to a judgment. We can see no room for so limited an interpretation. A valid judgment, while it is conclusive evidence of a debt, is vastly much more. It is a living obligation potential of as much grief to the judgment debtor as any mortgage bond, signed, sealed and delivered. It is a debt (33 C. J. 1056, par. 9, note 66); it is a debt of record. (*Idem,* note 67.) From the supporting authorities cited we deem it necessary to proffer only one—*McCormick v. Brown,* 36 Cal. 180, 95 Am. Dec. 170. It is so clearly in point that it should be conclusive. In that case, a judgment had been entered. Thereafter, the debtor made a new promise to pay. The court held that the statute of limitations would have thereby been tolled, had the promise been sufficient. And our C. S. 6631, prior to the amendment of 1923, was taken *verbatim* from the California statute in force at the time of the decision. The statute included judgments then. Even more so does it now.

The dismissal of appellant's petition was error. The judgment is reversed and the cause remanded for a new trial, the sole object being to determine whether judgment should be awarded against one or all of respondents, and to what extent. Should it appear that a new agreement was effected with the purpose of superseding the judgment, it is directed that the judgment be revived and declared a lien in the amount remaining unpaid under the contract. If respondents fail to establish such an agreement, it is ordered

that the judgment be revived in the original sum less whatever payments have been actually made.

Costs to appellant.

Givens, C. J., and Budge, Varian and McNaughton, JJ., concur.