MIRIAM ROSENBERG *vs.* HENRY H. ROBBINS & others.

Suffolk.    March 6, 7, 1933. — February 8, 1935.

Present: RUGG, C.J., FIELD, DONAHUE, & LUMMUS, JJ.

*Equity Jurisdiction*, To reach and apply equitable assets. *Insurance*, Life: surrender value. *Bills and Notes*, Note as payment. *Payment*.

A purpose of § 3 of St. 1928, c. 176, amending G. L. c. 175, §§ 125, 126, was to make clear that the statute should not be given a retroactive effect, and particularly was to avoid any possible constitutional objection thereto on the ground that it impaired rights of creditors acquired before it took effect. Per FIELD, J.

A master in a suit in equity found that in 1927 the plaintiff lent money to the defendant, which indebtedness was not evidenced by any writing and was not secured; that in 1929, upon request by the plain-

tiff for a payment on account, the defendant offered and the plaintiff accepted a negotiable promissory note for the amount of the indebtedness, there being expressed no understanding between the parties as to whether the giving of the note should operate as payment of the indebtedness; that at the time when the note was given there was in force a policy of insurance upon the defendant's life, issued previous to April 2, 1928, in which the right to change the beneficiary was reserved by the insured; and that the giving of the note operated as payment of the previous indebtedness. *Held*, that

(1) Even if, at the time when the note was given, the defendant had an interest in the insurance policy which the plaintiff could have reached and applied in satisfaction of the previous indebtedness, but which, by reason of St. 1928, c. 176 (approved April 2, 1928), he could not have reached and applied in satisfaction of his claim on the note, nevertheless that interest was merely a general asset of the defendant and did not constitute security for the previous indebtedness; and an inference was not warranted that, because of the existence of that interest at the time when the note was given, the plaintiff did not intend, and was not understood by the defendant to intend, to accept the note in payment of the previous indebtedness;

(2) There was nothing to rebut the presumption that the giving of the note constituted payment of the previous indebtedness; and the conclusion of the master to that effect was right.

Such suit in equity was to reach and apply the cash surrender value of the insurance policy in satisfaction of the note given in the circumstances above described. *Held*, that the plaintiff's claim was not one "which arise[s] out of or . . . [is] based upon any obligation created before . . . [St. 1928, c. 176] takes effect," within the meaning of § 3 of that statute, but arose from the new obligation created when the note was given, and therefore was subject to the changes effected in G. L. c. 175, §§ 125, 126, by said c. 176.

It *was stated* that a purpose of § 3 of St. 1928, c. 176, was to exclude from the application of that statute claims which, although for purposes of suit "based upon" obligations created after the statute took effect, arose "out of" obligations created before it took effect and not extinguished.

BILL IN EQUITY, filed in the Superior Court on April 17, 1931, described in the opinion.

The suit was referred to a master. Material findings by him, and decrees entered, are described in the opinion. The defendants Robbins, Siegel and New York Life Insurance Company appealed from the second interlocutory decree and the final decree, which were entered by order of *Fosdick*, J. The first interlocutory decree was entered by order of *Sisk*, J. Paragraphs 1 and 13 of the final decree were as follows:

"(1) That there is due to the plaintiff from the defendants, Henry H. Robbins and Barnet I. Siegel, the sum of $3,220, and that the said defendants, Henry H. Robbins and Barnet I. Siegel, pay to the said plaintiff said sum of $3,220 with interest thereon from this date to the date of payment, together with costs of suit . . . and that execution issue therefor."

"(13) That no costs are awarded to the plaintiff against the defendants New York Life Insurance Company and Metropolitan Life Insurance Company, nor any to them against the plaintiff."

*A. S. Allen,* for the defendants Robbins and another.

*J. Barker, Jr.,* for the defendant New York Life Insurance Company.

*S. B. Stein,* (*A. C. Rome & H. J. Stein* with him,) for the plaintiff.

FIELD, J. This bill in equity was brought to reach and apply to the payment of a joint and several negotiable promissory note for $3,000 of the defendants Robbins and Siegel and another person, dated February 28, 1929, payable in six months with interest, the cash surrender values of certain policies of insurance in the defendant insurance companies, Metropolitan Life Insurance Company and New York Life Insurance Company, on the lives of the defendants Robbins and Siegel, herein referred to as the individual defendants. G. L. (Ter. Ed.) c. 214, § 3 (7). The case was referred to a master who made a report to which the plaintiff and the defendant New York Life Insurance Company filed objections. An interlocutory decree was entered overruling the objections, treated as exceptions, and confirming the report. No appeal was taken from this decree. Thereafter another interlocutory decree was entered by another judge purporting to sustain the plaintiff's first exception, to overrule the other exceptions and to confirm the report as modified. A final decree was entered adjudging that there was due to the plaintiff from the individual defendants the sum of $3,220, ordering them to pay the plaintiff this amount with interest from the date of the decree, adjudging that the defendant in-

surance companies had sums of money in their hands or possession, being the cash surrender values of certain insurance policies on the lives of the individual defendants, and that the plaintiff is entitled to reach and apply these sums to the debt of these defendants, ordering them to surrender their policies according to the terms thereof to the insurance companies, and the insurance companies to treat as surrendered under the terms of the policies any policies in their possession, and ordering the ·insurance companies to pay the amounts of such cash surrender values to the plaintiff to be applied to the amount due from the individual defendants to the plaintiff. From the second interlocutory decree confirming the master's report and from the final decree the individual defendants and the defendant New York Life Insurance Company appealed.

The findings of the master show that when the bill was brought there was a "debt" from the individual defendants to the plaintiff on the negotiable promissory note described in the bill of complaint within the meaning of G. L. (Ter. Ed.) c. 214, § 3 (7), and it is not contended that the decree does not conform to the master's report in this respect. The question for determination is whether these defendants have "any property, right, title or interest, legal or equitable" in the policies of insurance issued by the defendant insurance companies which can be reached and applied under this statute. The plaintiff does not contend that there is any such "property, right, title or interest" except the cash surrender values of the policies.

The master's report contains findings with respect to ten policies, in each of which the right to change the beneficiary was reserved by the insured. The policies were issued before April 2, 1928. Two of these policies had no cash surrender value and these policies are not dealt with in the final decree, from which, as already stated, the plaintiff has not appealed. Of the other eight policies, one insured the life of the defendant Robbins in the defendant New York Life Insurance Company for the benefit originally of his minor daughter, but by change of beneficiary on January 14, 1930, thereafter for the benefit of his wife;

three insured the life of the defendant Siegel, in the same company, for the benefit of his wife; another insured his life in this company for the benefit of his minor child; and three insured his life in the defendant Metropolitan Life Insurance Company for the benefit of his wife. (Clearly a wife and a minor daughter of an insured each has an insurable interest in his life. *Loomis* v. *Eagle Life & Health Ins. Co.* 6 Gray, 396, 399. *Mutual Life Ins. Co.* v. *Allen,* 138 Mass. 24, 28.) The master found the cash surrender value of each of these policies as of the due date of the next premium due after the filing of the bill. It does not appear that there was default in the payment of any premium before the suit was brought or that at any time any policy was surrendered to the insurance company issuing it.

The policies of the defendant New York Life Insurance Company contained provisions in substance that the insured after two or three full years' premiums had been paid may "within three months after any default in payment of premium but not later" — and in some of the policies "at the end of any insurance year" — surrender the policy and receive the cash surrender value thereof or paid-up insurance, but if the policy is not "surrendered for cash or for paid-up insurance within three months after default in payment of premium, its cash surrender value at date of default" with certain adjustments shall automatically purchase continued insurance from the date of default without cash surrender value. The insured defaulted in the next premium due after this suit was brought on each policy issued by the New York Life Insurance Company.

The individual defendants contend that the cash surrender value of the policies cannot be reached and applied by the plaintiff to the payment of the note upon which this suit is brought because of the provisions of G. L. c. 175, §§ 125, 126, as amended by St. 1928, c. 176, which was approved April 2, 1928, and took effect ninety days thereafter. See now G. L. (Ter. Ed.) c. 175, §§ 125, 126. The defendant New York Life Insurance Company contends, with respect to its policies, that the cash surrender

value thereof cannot be so reached and applied because, in accordance with the terms of the policies, the cash surrender value of each policy, by reason of default in payment of premium after the bill was brought and the absence, so far as appears, of any surrender of the policy, automatically purchased continued insurance without cash surrender value.

The provisions of G. L. c. 175, §§ 125, 126, as amended, prevent the plaintiff from reaching and applying to the payment of her note the cash surrender value of the policies.

The material portions of G. L. c. 175, §§ 125, 126, as amended by St. 1928, c. 176 (see now G. L. [Ter. Ed.] c. 175, §§ 125, 126), are as follows (material provisions added thereto by St. 1928, c. 176, approved April 2, 1928, being indicated by italics): "If a policy of *life or endowment* insurance is effected by any person on his own life or on another life, in favor of a person other than himself having an insurable interest therein, the lawful beneficiary thereof, other than himself or his legal representatives, shall be entitled to its proceeds against the creditors and representatives of the person effecting the same, *whether or not the right to change the named beneficiary is reserved by or permitted to such person*; provided, that, subject to the statute of limitations, the amount of any premiums for said insurance paid in fraud of creditors, with interest thereon, shall enure to their benefit from the proceeds of the policy . . . . *No court, and no trustee or assignee for the benefit of creditors, shall elect for the person effecting such insurance to exercise such right to change the named beneficiary*" (§ 125). "Every policy of life or endowment insurance made payable to or for the benefit of a married woman, or after its issue assigned, transferred or in any way made payable to a married woman, or to any person in trust for her or for her benefit, whether procured by herself, her husband or by any other person, and whether the assignment or transfer is made by her husband or by any other person, *and whether or not the right to change the named beneficiary is reserved by or permitted to the person effecting such insurance*, shall enure to her separate use and

benefit, and to that of her children, subject to the provisions of the preceding section relative to premiums paid in fraud of creditors . . . . *No court, and no trustee or assignee for the benefit of creditors, shall elect for the person effecting such insurance to exercise such right to change the named beneficiary*" (§ 126). St. 1928, c. 176, § 3, provides as follows: "This act shall not apply to claims of creditors of any person effecting any life or endowment insurance which arise out of or are based upon any obligation created before this act takes effect."

The plaintiff does not contend that she can reach and apply to the payment of her note the cash surrender value of the policies if the changes in G. L. c. 175, §§ 125, 126, effected by St. 1928, c. 176, are applicable to her claim. See *Dussoulas* v. *Lang,* 24 Fed. Rep. (2d) 254; certiorari denied 277 U. S. 593, affirming *In re Lang,* 20 Fed. Rep. (2d) 236. *In re Messinger,* 29 Fed. Rep. (2d) 158; certiorari denied *sub nomine Reilly* v. *Messinger,* 279 U. S. 855; *Hickman* v. *Hanover,* 33 Fed. Rep. (2d) 873. But the plaintiff contends that since in each policy the insured reserved the right to change the beneficiary the cash surrender values thereof were not protected against creditors by G. L. c. 175, §§ 125, 126, prior to the changes in these sections effected by St. 1928, c. 176, and that the changes so effected are not applicable to the plaintiff's claim because of the provision of St. 1928, c. 176, § 3, that this act shall not "apply to claims of creditors . . . which arise out of or are based upon any obligation created before this act takes effect." Since, however, we reach the conclusion, for reasons hereinafter stated, that the changes in G. L. c. 175, §§ 125, 126, effected by St. 1928, c. 176, are applicable to the plaintiff's claim it is not necessary to decide whether the cash surrender values of the policies would have been protected by the statute before such changes were made. See, however, *Cohen* v. *Samuels,* 245 U. S. 50; *Cohn* v. *Malone,* 248 U. S. 450; *Blinn* v. *Dame,* 207 Mass. 159, 166–167; *Eldredge* v. *Mutual Life Ins. Co.* 217 Mass. 444.

The question, therefore, on which the case turns is whether the plaintiff's claim on which the suit is brought

is a claim which "arise[s] out of" or is "based upon any obligation created before this act [St. 1928, c. 176] takes effect" within the meaning of § 3 thereof which excludes such claims from the operation of the amending statute.

It is obvious that the purpose of § 3 is to make clear that St. 1928, c. 176, is not to be given a retroactive effect and particularly to avoid any possible constitutional objection thereto on the ground that this statute impaired rights of creditors acquired before it took effect. See *Bank of Minden* v. *Clement*, 256 U. S. 126; *W. B. Worthen Co.* v. *Thomas*, 292 U. S. 426, 431; *In re Messinger*, 29 Fed. Rep. (2d) 158. See also *See* v. *Kolodny*, 227 Mass. 446, 449. And the statute must be construed so as to accomplish this purpose.

The nature of the claim which the plaintiff seeks to enforce in this suit must be considered. The suit is brought on a negotiable promissory note. The facts found by the master in regard to this note are as follows: It was a negotiable promissory note payable to the plaintiff and executed and delivered by the individual defendants on February 28, 1929. At that time these defendants were indebted to the plaintiff in the sum of $3,000 for money loaned by her to them. This indebtedness had been incurred about February, 1927. It "was not secured in any way and not evidenced by any writing. About February 28, 1929, the plaintiff requested a payment on account of the indebtedness. The said defendants were unable to pay any sum in cash and offered her this note payable in six months, which she accepted. There was no understanding expressed as to whether the giving of the note was to operate as payment of the prior existing obligation." The master ruled that "the giving of said note raised a presumption of payment of the prior indebtedness or obligation" and found that the "presumption of payment of the prior indebtedness or obligation" raised by the giving of the note was "not rebutted by the above facts" and "therefore . . . that the said note operated as a payment of said indebtedness or obligation." The plaintiff's first exception was to this ruling and finding and the

exception was overruled by the first interlocutory decree confirming the master's report, from which decree no appeal was taken, but purports to have been sustained by the second interlocutory decree confirming the master's report, from which the individual defendants and the defendant New York Life Insurance Company appealed. We do not discuss the propriety or effect of the second interlocutory decree on a matter which had been fully dealt with in the previous interlocutory decree (see *Barringer* v. *Northridge*, 266 Mass. 315, 320), for we are of opinion that the later decree in sustaining the plaintiff's first exception to the master's report was wrong on a broader ground.

The master's finding — involving a ruling of law stated in the master's report, see *Dobias* v. *Faldyn*, 278 Mass. 52, 58 — that the note in suit "operated as a payment of said indebtedness or obligation" was right on the subsidiary facts found. In the absence of evidence to the contrary "a negotiable promissory note given for an unsecured simple contract debt is deemed to have been given and taken in payment of that debt." *Cary Brick Co.* v. *Wheeler*, 210 Mass. 338, 340. *Fratta* v. *Rossetti*, 277 Mass. 98, 99–100, and cases cited. The indebtedness for which the note in suit was given was unsecured. Even though, when the note was given, each of the defendants had interests in the policies of insurance which could be reached by his creditors, such interests were merely general assets and in no sense security for his indebtedness to the plaintiff. Whether a negotiable promissory note is given and taken in payment of a preëxisting debt depends upon the intention of the parties. The significance of the possession by a creditor of security for a debt is that it warrants an inference that he did not intend — and the debtor did not understand him to intend — by accepting a negotiable promissory note for such debt to relinquish his security by accepting the note as payment. *Butts* v. *Dean*, 2 Met. 76, 79. *Taft* v. *Boyd*, 13 Allen, 84, 86. *O'Conner* v. *Hurley*, 147 Mass. 145, 149–150. *Stebbins* v. *North Adams Trust Co.* 243 Mass. 69, 73–74. But the mere possession by the debtor of general assets which could be reached by

the creditor and applied to the payment of the debt but, by reason of exemption laws more favorable to the debtor, cannot be reached and applied to the payment of the note, is not sufficient to warrant such an inference. See *Wyman* v. *Fabens*, 111 Mass. 77. In *Tucker* v. *Drake*, 11 Allen, 145, though reference was made to the fact that the debtor, with the intention of taking advantage of exemption laws more favorable to him, prevailed upon his creditors to accept new notes for old, the decision that the new notes were not given and taken in payment of the prior notes was not put on that ground but, rather, on the ground that other evidence showed that the creditors "were in substance informed that a renewal was intended, and . . . this was the transaction to which they assented" (pages 147–148), and that the intention of the debtor that the new notes should constitute payment, not shared by the creditors, was not controlling. In the present case there was no evidence of an intention of any party to the note that it should not extinguish the prior indebtedness.

As this suit is brought upon the negotiable promissory note and not upon the preëxisting indebtedness, the claim which the plaintiff is seeking to enforce clearly is "based upon" the obligation created by the note within the natural meaning of those words as used in St. 1928, c. 176, § 3. See *Wyman* v. *Fabens*, 111 Mass. 77, 82. And this obligation was created after St. 1928, c. 176, took effect. But on the principle of statutory construction that "every word of a legislative enactment must be given force and effect and no word treated as superfluous, unless no other possible course is open" (*Pacquette* v. *Fall River*, 278 Mass. 172, 176–177), the words "which arise out of" in the phrase "claims of creditors . . . which arise out of . . . any obligation created before this act takes effect," in § 3, are to be given a somewhat broader meaning. Evidently the purpose of this section is to exclude from the application of St. 1928, c. 176, claims which, though for purposes of suit "based upon" obligations created after the statute took effect, "arise out of" obligations created before it took effect which have not been extinguished. See *Wyman*

v. *Fabens*, 111 Mass. 77, 82, explaining *Tucker* v. *Drake*, 11 Allen, 145. In the present case the negotiable promissory note upon which the suit is brought was given and taken in payment of a preëxisting debt, which was thereby extinguished. Consequently the plaintiff's claim does not "arise out of" an obligation created before St. 1928, c. 176, took effect, but, rather, arises out of a new obligation created when the note in suit was accepted by the plaintiff, and is within the operation of the statute. See *Wyman* v. *Fabens*, 111 Mass. 77, 82.

Since, for the reasons stated, the plaintiff cannot reach and apply to the payment of the note in suit the cash surrender value of the policies of insurance, it is not necessary to consider the contention made by the defendant New York Life Insurance Company with particular reference to its policies.

It follows that the interlocutory decree purporting to sustain the plaintiff's first exception and the final decree are to be reversed, and a final decree is to be entered containing the provisions included in paragraphs 1 (completed with respect to the amount of costs) and 13 of the final decree appealed from and dismissing the bill as against all defendants other than Henry H. Robbins and Barnet I. Siegel.

*Ordered accordingly.*