Common Pleas Court of Hamilton County.

MAX SENIOR V. GEORGE C. BRADEN, ET AL.

Decided January 13, 1933.

*Paxton & Seasongood,* for the plaintiff.

*Gilbert Bettman,* attorney general, and *Perry L. Graham,* ass't. attorney general, for the Tax Commission of Ohio.

*Robert N. Gorman,* county prosecutor and *Jack B. Josselson,* ass't. prosecutor, for the County Auditor and Treasurer.

*Thomas C. Lavery, amicus curiae.*

RYAN, J.

This proceeding is instituted for the purpose of determining the power of the state of Ohio, under the new intangible tax law, to tax "equitable interests divided into shares, evidenced by transferable certificates," according to the "income yield" as defined in the statute.

The plaintiff alleges that he is now, and was on January 1, 1932, the owner of certain equitable interests in land evidenced by transferable certificates of ownership described in the petition; that rental was paid to

the plaintiff as such equitable owner during the year 1931, and that the plaintiff has duly filed with the county auditor his individual tax return of taxable property for 1932 on the official forms prescribed by the Tax Commission of Ohio, and has paid to the county treasurer one-half of the tax due in accordance with said return.

The plaintiff further alleges that he has fully listed in said return the taxable property required to be listed, including the rental received from the equitable interests in the land referred to in said certificates, but has not included the amount of such rental as income yield subject to tax.

Plaintiff says that Section 5323, General Code, purports to except from taxation as investments "interests in land and rent and royalties derived therefrom other than equitable interests divided into shares evidenced by transferable certificates," that is, said section purports to except from the taxation as investments interests in land, legal and equitable, and rents derived therefrom when not evidenced by transferable certificates, but does not except from taxation as investments equitable interests in land and rents derived therefrom when evidenced by transferable certificates.

Plaintiff says that the assessing and collecting of taxes on plaintiff's said equitable interests in land evidenced by transferable certificates, when all other equitable interests in land not evidenced are exempted therefrom, is an arbitrary and unreasonable discrimination without warrant of law, and amounts to a taking of private property without due process of law, and denies to plaintiff, a citizen of the United States, the equal protection of the law, in violation of plaintiff's rights under the Constitution of the United States and of Article XIV, Section 1 of the amendments thereto.

Plaintiff further says that the lands in which plaintiff has such equitable ownership, as aforesaid, have been assessed in the names of the legal owners or lessees thereof according to value, without any deduction or diminution by reason of plaintiff's interests in said lands. Plaintiff says that the levying and collecting of taxes

on his equitable interests in the lands so assessed at full value in the names of the owners or lessees constitutes double and unequal taxation in violation of the Constitution of Ohio and Article XII, Sections 2 and 5 thereof. Plaintiff further says that equitable interests in land whether evidenced by transferable certificates or not, constitute interests in real estate within the purview of Section 5322, General Code, defining real property and land; and that Section 5323, General Code, insofar as it purports to tax equitable interests in land other than by uniform rule is contrary to Article XII, Section 2, of the Constitution of Ohio, which provides that "land and improvements thereon shall be taxed by uniform rule according to value."

Plaintiff further says that the levying and collecting of taxes on plaintiff's equitable interests in real estate situated outside of the state of Ohio, to-wit, the Clark-Randolph building site in Chicago, Illinois, the Insurance Exchange building in Boston, Massachusetts, and the City National Bank building in Omaha, Nebraska, is an attempt to levy and collect taxes on property wholly outside the state of Ohio, is beyond the taxing power of the state of Ohio and amounts to a taking of private property without due process of law in violation of the Constitution of the state of Ohio, and Article I, Section 16 thereof, and of the Constitution of the United States and Article XIV, Section 1 of the amendments thereof.

Defendants intend to assesses, threaten to assess and will, unless restrained by order of this court, assess the Ohio intangible property tax on plaintiff's said equitable interests in land, and will attempt to collect said tax, to the irreparable injury of plaintiff, as to which plaintiff is without adequate remedy at law.

Wherefore, plaintiff prays that the court declare that Section 5323, General Code, insofar as it purports to tax equitable interests in land, and rents derived therefrom, only when such equitable interests are evidenced by transferable certificates, to be illegal, unconstitutional and void, and to restrain the assessment and collection of the tax therein provided for.

Answering the petition of the plaintiff, the defendants,

constituting the Tax Commission of Ohio, deny generally the allegations of the petition, and further deny that said allegations are sufficient to give the court any jurisdiction as to the granting of the relief prayed for.

The county auditor and treasurer, by joint answer, admit that the plaintiff is and was on January 1, 1932, a resident of Cincinnati, Hamilton county, Ohio, and that on said date he was the owner of the land trust certificates set out in the petition, and that as the owner of such certificates he received an income therefrom during the year 1931, as alleged in the petition. These defendants further admit that unless otherwise restrained they will assess and proceed to collect the taxes on said land trust certificates in accordance with the tax laws of the state of Ohio. Defendants further answer by way of general denial except as to facts admitted and pray for dismissal of plaintiff's petition.

The plaintiff contends;

*First*: that the land trust certificates are merely evidence of an equitable interest in real estate, and that as to the land trust certificates which describe real estate located without the state, the state of Ohio has no right to tax said property since by so doing it would be a tax on real estate or tangible property having no situs within the State; .

*Second*: as to the land trust certificates evidencing an interest in real estate within the state, the state has no power to tax, unless the real estate described in said certificates be not taxed;. : .

*Third*: the section in question provides for the levying and collection of a tax on interests in real estate which are divided into shares when it exempts interests not divided into shares evidenced by transferable certificates, and for that reason the tax is an arbitrary and unreasonable discrimination.

The defendants contend;

*First*: that the land trust certificates described in plaintiff's petition are not evidence of an equitable interest in real estate, but in and of themselves represent intangible property subject to the tax, and;

*Second*: that the taxation of equitable interests divided into shares evidenced by transferable certificates of interests in land, is a reasonable classification of property under the Constitution of Ohio, and does not violate the provisions of either the State or Federal Constitution.

An examination of the facts as to the creation of the interest or rights of the petitioner in the property comprising the trust estate is necessary to the determination of the question of its taxability. The nature of all the land trust certificates described in the petition, with the exception of the Lincoln Inn Court ground rent, are substantially the same:

For example, The Clark-Randolph building site trust. William G. Pohl, Cecilia Pohl, his wife, were the owners of the premises known as the Clark-Randolph building site, being lots 5 and 6 in Block 35 in the original town of Chicago, Illinois. On March 13, 1928, William G. Pohl and Cecilia Pohl, his wife, conveyed said premises to the Chicago Title & Trust Company of Chicago, Illinois, subject to a lease by which the Pohls had demised said premises to one Leo M. Sage, for a term of ninety-nine years renewable at the option of the lessee for one additional like term, in consideration of the lessee's promise, *inter alia*, to pay a stipulated rental. Simultaneously with the execution and delivery of the deed from William G. Pohl and wife to said trustee, the Trust Company, and Pohl acting for himself and such persons, partnerships, associations and / or corporations as might thereafter become parties thereto by acceptance of certificates of equitable ownership, entered into an agreement and declaration of trust by which the Trust Company, as Trustee, agreed to hold the title to the Clark-Randolph building site in trust for the use and benefit of Pohl and all future holders of certificates of equitable ownership, it being provided that all such certificates should be issued to and in the name of William G. Pohl in consideration of the conveyance to such trustee. Under this arrangement a land trust certificate for 3250 shares in the trust was issued, this evidenced the entire equitable ownership of said trust estate.

Subsequently, the plaintiff herein acquired a 5/3250ths, of the equitable ownership and beneficial interest in the property constituting the trust estate held by the Trust Company. The land trust certificate does not fully set forth the terms and conditions of the trust, but by reference the declaration of trust is made a part of such certificate. The pertinent parts of the declaration of trust are as follows:

"ARTICLE I. The Trustee hereby agrees that it will hold as Trustee upon the trusts hereinafter set forth, for the use and benefit of all present and future holders of the Certificates of Equitable Ownership issued hereunder (hereinafter sometimes called 'Land Trust Certificates'), the title acquired by the Trustee by a certain deed dated as of March 1, 1928, but in fact executed and delivered simultaneously herewith, from one William G. Pohl of the City of Chicago, County of Cook, and State of Illinois, and Cecelia Louise Pohl, his wife, and filed for record in the office of the Recorder of Cook County, Illinois, on the —— day of March, 1928, as Document No. 9956060, to the following described premises situated in the City of Chicago, County of Cook, and State of Illinois, and bounded and described as follows, to wit:
"Lots Five (5) and Six (6) in Block Thirty-five (35) in the Original town of Chicago.
The interest of the Trustee in said premises is hereinafter sometimes referred to as the 'trust estate.'*   *   *

"ARTICLE II. The equitable ownership and beneficial interest in the Trust Estate is divided into three thousand two hundred and fifty (3,250) indivisible equal shares, (each share representing 1/3250th part of the equitable ownership of said trust estate) which shares shall be represented by Certificates of Equitable Ownership, said Certificates being referred to and designated as 'Land Trust Certificates', varying only as to the respective numbers, names of the respective Beneficiaries, and the number of shares represented by the Certificates. * * *
"The Trustee agrees that on the first days of June and December of each year, commencing June 1, 1928, it will pay to the registered holder of this Certificate, as registered on the Trustee's transfer books as of the 25th day of the month just preceding the month in which such distribution is to be made, said holder's pro rata share of the net proceeds which may be derived by it from the rental of the property described in the Declaration and con-

stituting the Trust Estate, and that upon any sale of said property, either under the option to purchase hereinafter mentioned or otherwise, or a sale at the termination of the trust, it will pay to the registered holder hereof such holder's proportionate share of the net proceeds derived by it from such sale, all in the manner provided in the Declaration. * * *

"The holder of this Certificate, by the acceptance hereof, expressly assents to all the terms and conditions of the Declaration and becomes a party thereto as fully to all intents and purposes as if said holder had signed the Declaration.

"ARTICLE III. The Trustee agrees that, after payment of the compensation of the Trustee provided to be paid in Article X hereof, and after payment of, (1) the expenses of administering this trust, (2) any taxes, charges, assessments, and any and all amounts which the Lessor under said Lease is authorized or permitted to pay for and on behalf of the Lessee for the protection of the Trust Estate free from lien, charge or encumbrance of any kind or character whatsoever, (3) any Federal or other income tax or taxes, which under any present or future law, the Trustee may be required to pay or withhold upon the receipt by it of the amounts payable to it under the provisions of said Lease, and/or (4) any other tax, charge, assessment or liability which the Trustee may be required to pay, and subject to the provisions of this Declaration, it will distribute among the Beneficiaries (and in such distribution, the shares, if any, held in the Depreciation Fund shall share ratably with all other outstanding shares) in proportion to their respective interests as evidenced by Certificates issued hereunder and at the time outstanding, all the net proceeds of rentals which may be received by it under the terms of the Lease. * * *

"ARTICLE IV. * * * Upon the exercise by the Lessee of the option to purchase the Trust Estate, the Trustee, upon receipt of the option price after deducting all necessary expenses, including reasonable compensation to the Trustee for its services in connection with the completion of said sale and the distribution of the net proceeds thereof, shall distribute the net proceeds among the Beneficiaries holding outstanding certificates (other than certificates in the Depreciation Fund), in accordance with the respective interests held by them as evidenced by their several certificates and upon their surrender thereof. * * *"

Similar provision is also made for same by the Trustee of the entire property comprising the Trust Estate because of a default by the Lessee, and/also upon the sale by the Trustee of the entire property prior to the termination of the Lease.

"ARTICLE VI.   No Beneficiary as such, shall have any legal title to the trust property itself, or any part thereof, real or personal, held by the Trustee, his interest being an equitable estate only, and he shall have no right to call for any partition of the Trust Estate during the continuance of the trust, any and all such rights being waived by the Beneficiaries, by acceptance of the Land Trust Certificates.   Neither the death of a Beneficiary nor any transfer by operation of law of the interest of a Beneficiary during the continuance of this trust shall operate to terminate the trust, nor shall it entitle the legal representative of a  deceased Beneficiary to an accounting or to take any action in the courts or otherwise against the Trust Estate or the Trustee. * * *

"ARTICLE VIII. * * * Land Trust Certificates and the equitable interest in the trust estate evidenced thereby may be transferred and conveyed in full shares, but not in fractions thereof, by the owner or owners thereof, in person or by attorney duly authorized, and upon presentation to the Trustee of any such Certificate, duly executed for transfer in the form hereinbefore recited conveying the equitable interest evidenced "by such Certificate, the Trustee will execute and deliver to such transferee a new Land Trust Certificate or Certificates representing the equitable interest in the Trust Estate so transferred in full shares thereof, but not in fractions thereof, and such transferee shall, by accepting such Certificate (and the equitable interest evidenced thereby) so transferred to him or any new Certificate issued in place thereof, become a party to the Declaration and be bound thereby and entitled to all the rights thereunder. * * *

"ARTICLE IX. * * * The Trustee shall have the exclusive right to control the Trust Estate as it may deem for the best interests of the Beneficiaries, free from all control by the Beneficiaries, as fully and to the same extent as though the Trustee were the sole legal and equitable owner thereof, and shall not be subject to any obligation to the Beneficiaries other than such as are expressly assumed hereunder."

An examination of the facts as to the creation of the interest or rights of the petitioner in the property comprising the trust estate in connection with the *Lincoln Inn Court "Certificate of Interest in Ground Rent"*, discloses that on February 5, 1917, The Conrad Windisch Company was the owner of the premises located at the north west corner of Main Street and Patterson Alley, in the city of Cincinnati, Hamilton county, Ohio, said premises having a frontage of 76 feet, more or less, on Main Street, and abutting 176 feet, more or less, on Patterson Alley, and being all of the property on which the Lincoln Inn Court Building is located, conveyed said premises to the Title Guaranty and Trust Company. On the same date, The Title Guaranty and Trust Company executed a declaration of trust wherein it is provided:

"That it holds and will continue to hold the title to said premises for the use and benefit of the holders of certificates of interest in the ground rent hereinafter referred to. * * *

"To collect and receipt for the rental due upon said perpetual lease hereinbefore provided for and after deducting from the gross rental received the sum of $100.00 per annum from Trustee's compensation, to distribute the balance to the holders of such certificate in proportion to the interest of each.

"Upon the demand of one or more holders of such certificates aggregating $10,000 par value, and the surrender of such certificates to convey to such holders jointly by special warranty deed the proportionate part of the fee simple title to said property to which their certificates may entitle them. After conveyances aggregating $120,000 par value have been made, the remaining certificate holders may demand a conveyance. * * *

"The value of the trust estate shall be taken and understood to be $127,500 and certificates therefor shall be issued in amounts of 1/1275ths or multiples thereof, and in the event of the exercise of the privilege of purchase reserved in said lease, said Trustee shall distribute to the certificate holders the proportions of said purchase price represented by the certificates held by each.

"Said certificates shall be transferable only on the books of the trustee upon surrender thereof, and the acceptance of a certificate shall make the person named therein a party to and bound by the terms of this agreement.

"This trust shall continue until the exercise of the privilege of purchase reserved in said lease at which time all certificates must be surrendered to the Trustee, or until the entire property shall have been conveyed pursuant to the provisions of article (5) of this agreement. No trustee shall be required to give bond and shall be liable only for his or its own acts and no person dealing with the trustee shall be required to see to the application of any money paid to the trustee.

"When the privilege of purchase reserved in said lease shall be exercised, the trustee shall forthwith convey said premises to the lessee or his assigns, and the rights of the certificate holders in said premises shall thereupon cease and determine and be transferred to the proceeds of sale in the hands of the trustee."

The answers to the several questions presented are dependent upon the determination of the question as to whether equitable interests divided into shares evidenced by certificates are real estate or personal property in the nature of choses in action.

## CONSTITUTIONAL PROVISIONS.

The pertinent provisions of the Constitutions are:
Ohio Constitution, Article XII, Section 2:

TAXATION BY UNIFORM RULE:  *  *  *  No property, taxed according to value, shall be so taxed in excess of one and one-half per cent of its true value in money for all state and local purposes  *  *  *.  Land and improvements thereon shall be taxed by uniform rule according to value.  *  *  *

Ohio Constitution, Article XIII, Section 5:

LEVYING OF TAXES AND APPLICATION:  No tax shall be levied, except in pursuance of law; and every law imposing a tax, shall state, distinctly, the object of the same, to which only, it shall be applied.

United States Constitution, Article XIV, Section I:

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside.  No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny

to any person within its jurisdiction the equal protection of the laws.

The Sections of the General Code relating to the subject matter of this controversy provide as follows:—

Section 5323, General Code provides:

" 'INVESTMENTS' DEFINED. The term 'investments' as used in this title, includes the following: * * * Annuities, royalties, and other contractual obligations for the periodical payment of money and all contractual and other incorporeal rights of a pecuniary nature whatsoever from which income is or may be derived, however evidenced, *excepting* (1) patents and copyrights and royalties derived from each, (2) *interests in land and rents and royalties derived therefrom, other than equitable interests divided into shares evidenced by transferable certificates.* * * *"

Section 5388, General Code, provides:

"* * * In listing investments, the amount of the income yield of each for the calendar year next preceding the date of listing shall, excepting as otherwise provided in this chapter, be stated in dollars and cents and the assessment thereof shall be at the amount of such income yield. * * *"

Section 5389, General Code, provides:

"* * * 'Income yield' as used in Section 5388 of the General Code and elsewhere in this title means the aggregate amount paid as income by the obligor, trustee or other source of payment to the owner or owners, or holder or holders, of an investment, whether including the taxpayer or not, during such year. * * *"

Section 5322, General Code, provides:

" 'Real Property' and 'Land'. The terms 'real property' and 'land' as so used, include not only land itself, whether laid out in town lots or otherwise, with all things contained thereon, but also, unless otherwise specified, all buildings, structures, improvements, and fixtures of whatever kind thereon, and all rights and privileges belonging, or appertaining thereto."

In the very able and learned arguments of counsel, and the exhaustive briefs submitted, every important decision pertinent to the question presented have been reviewed,

but we are unable to find any Ohio adjudication directly in point.

In the early decision of *Avery* v. *Durfrees,* 9 Ohio, 145, the court defines real property as—

"The interest which a man has in lands, tenements or heriditaments. If it be such an interest as can be enforced in a court of law it is a legal interest or estate. If it be such as can only be enforced in a court of chancery it is an equitable interest or estate. But in either case it is real estate or property."

And again in the case of *Biggs* v. *Bickel,* 12 O. S. 49, the court defines real estate as an *"interest"* in lands, tenements or heriditaments.

Bispham, in his work on Equity, discussing equitable titles says:

"A trust, in its technical sense, is the right enforceable solely in equity, to the beneficial enjoyment of property of which the legal title is in another. The radical idea of a trust is this separate co-existence of the legal title with the beneficial ownership, or, as it came to be called, the equitable title. The perfect ownership is, as it were, decomposed into its constitutuent elements of legal title and beneficial interests which are vested in different persons at the same time, * * *."

Again the learned author says:

"The rules for the descent of equitable estates are the same as those which regulate the devolution of legal titles. Equitable interests are within the statute of distributions."
* * *
"Whatever would be the rule of law if it were a legal estate it would be applied in equity to a trust estate."

Coming to a consideration of the nature and status of a Land Trust Certificate, we find the same to be very positively and accurately defined in the opinion of the attorney general, No. 3640—1926, O. A. G., page 376, wherein he says:—

"* * * The land trust certificate is exactly what its name implies—a certificate evidencing an interest in the equitable ownership of land held in trust, and is, therefore, a real estate investment. It is not in any sense a mortgage, a leasehold bond or note, but is an evidence of

actual ownership in whatever property may be trusteed as a basis for the issuance of any particular series or designation of certificates. The certificate is merely an evidence of the holder's simple individual share in the ownership of large parcels of property.

"As these certificates are merely an evidence of owner- \ ship they have, of course, no par value or other fixed nominal value. Nothing but custom and convenience govern the price at which the certificates are sold and the interest which accrues thereupon. As the land trust certificate is merely an evidence of ownership, there is, of course, no such thing as maturity; and it is merely evidence of equitable ownership of real estate, no personal property taxes are payable thereon. * * *

"It is therefore believed that the holders of the land trust certificates authorized under the aforesaid declaration of trust are not required to list them for taxation. You further inquire if it would make any difference if the real estate in question was located outside of Ohio, or the trustee was a non-resident of this state; or if the trustee was a non-resident and the land was also without the state.

"It is believed that the said statement of changed status would make no difference in our answer as before herein stated.

"'Therefore, it may be said that in the state where both trustees and *cestui que trust* reside one tax is all that may be imposed; and if they reside in different states, the tax is imposed where the property is held."

In this opinion the attorney general quotes from the decision of the court in the case of *Morrison* v. *Manchester*, 58 N. H. at page 563, wherein the court says:

"The division of title into legal and equitable parts is not a multiplication of property. The owner of a farm does not pay two taxes, one on his farm and another on his deed, although the deed is property of value as evidence of his title and is protected as property by civil and criminal process * * * and if the testator dividing the equitable title and beneficial interest into four shares gave two shares to his widow and one share to each of his two children, directed the trustee to issue to them certificates as evidence of their respective rights in the trust property, and made the certificates assessable and available as personal property, like certificates of corporate stock, and if this disposition of his property was authorized by law, the united titles of the trustee and widow and

children would not be more than the title of the testator."

The above opinion of the attorney general was quoted and given great weight in the recent case of *Narragansett Mutual Fire Insurance Company* v. *Burnham,* decided May 27, 1931 and reported in 154 Atlantic, 909, wherein the court held:

"Land Trust certificates not to be 'secured' and therefore not taxable under the statute, but rather a 'muniment of title of equitable interest in real estate.' "

At page 511, the court says:

"Certificate holders in trust organizations have for some purposes been held to be partners (*Frost* v. *Thompson,* 219 Mass. 360) ; voluntary associations (*Hecht* v. *Malley,* 265 U. S. 144 and pure trusts. *Baker* v. *Commissioner of Corporations,* 253 Mass 130) ; (*Rhode Island Hospital Trust Company* v. *Copeland,* 39 R. I. 193). The test to determine to which class a particular trust belongs as applied in the Massachusetts decisions in the measure of control which the certificate holders have over the trustees. If the latter are free from the control of the former in the management of the property the relation between them is that of trustee and *cestui que trust,* if the certificate holders are associated together in the management of the property and the trustees are simply managing agents then a partnership relation arises. *Hecht* v. *Malley, supra,* citing *Williams* v. *Milton,* 215 Mass. 1; *Frost* v. *Thompson, supra; Dana* v. *Treas,* 227 Mass. 562; *Priestley* v. *Treas,* 230 Mass. 452. For purposes of taxation the nature of the property constituting the trust *res* may be the determining factor. *Dana* v. *Treas. supra; Baker* v. *Commissioner of Corporations, supra.* In the instant case it is clear that the agreement and declaration of trust created a pure trust. The trust *res* is real estate. The certificate holders have no control over the trustee, whose power over the trust property is absolute, limited only by the principles of equity applicable to relation of trustee and *cestui que trust.* Said agreement contains no provision for concerted action on the part of certificate holders other than to give their consent to any change in the declaration of trust made by the trustee. There is no provision for conversion into personal property except in case the option to purchase is exercised by the lessee or the lessee shall be in default of any of the provisions of the lease and in such latter event a sale of the trust

property rests entirely in the discretion and judgment of the trustee. The option to purchase may never be exercised and this provision of the lease does not work a conversion under the law of Ohio. *Smith* v. *Lowenstein,* 50 Ohio St. 346. The contention of the respondents that these land trust certificates are taxable as a security under the provision of Sections 10 and 11, Chapter 59 (Sections 820, 821) G. L., 1932, is untenable. The word 'security' in its legal sense is commonly understood to mean something given or deposited as security for the fulfillment of an obligation. These certificates do not relate to any obligation or promise. The holders have no remedy beyond recourse to the trust property in case they fail to receive the expected return on their investment. In our opinion the land trust certificates owned by the petitioner is not a security within the meaning of the statute, but is a muniment of title to an equitable interest in real estate in Ohio.

And at page 512 the court says:—

"Our conclusion is that the Land Trust Certificates owned by the petitioner represents an equitable interest in the real estate in Ohio and is, therefore, not subject to taxation under Sections 10 and 11, Chapter 59 (Sections 820 and 821) G. L., 1923.

See also the case of *Bates* v. *The Decree of the Probate Judge,* 160 Atlantic Rep. 22, wherein it says:—

"Facts disclosed that, while trust agreement reserved to shareholders in trust right to terminate trust or appoint new trustee, and gave them certain other rights which might be necessary for protection or benefit of shareholders, management of property was within control of trustee at all times, and by trust agreement intended so to be. By terms of trust agreement, trust was to continue until twenty years after death of last survivor of certain named persons and at termination the trustee was to sell trust property and divide net proceeds and all other property of trust among then shareholders in proportion to respective interests."

The Court at page 26 says:—

"Our conclusion being that we are bound by the Massachusetts law in determining the question before us, we hold that the Wildes Building Trust is a trust and not a partnership, and that the shares under consideration represent an interest in real estate, and that for that reason they are not subject to an inheritance tax in Maine."

In view of the above and the many authorities examined, which the court for the sake of brevity refrains from reviewing here, this court is of the opinion that the equitable interests divided into shares evidenced by certificates, are interests in real estate and not personal property in the nature of equitable choses in action. That the land trust certificates are merely evidence of an equitable interest in real estate, and that as to the interest which the land trust certificates describe in real estate located without the state of Ohio, this state has no power to tax since it would be a tax on real estate having no situs within the state.

That the land trust certificate is no more than an evidence of an equitable interest in real estate, a mere muniment of title and no more the subject of taxation under our present law than would be the deed to real estate, and in any event the interest described therein is not subject to taxation in the state of Ohio, unless the real estate described therein be not taxed.

The court is of the further opinion that the tax attempted to be levied under the statute is not a tax on the certificate since the statute expressly refers to "interests in lands, and rents and royalties derived therefrom," and when it exempts equitable interests divided into shares not evidenced by transferable certificates, and includes for taxation those shares which are evidenced by such certificates, it makes an unreasonable classification.

As to the contention that the "Intangible Tax" is an income tax rather than a property tax, it will be readily seen from an examination of Sections 5388 and 5389, General Code, that the "income yield" is merely a norm to be used in fixing the amount of the tax to be paid and that it is not an "income tax."

The conclusions of the court herein apply with equal force to all of the certificates described in the petition including the Lincoln Inn Court "ground rent certificates."

In view of the above the prayer of the plaintiff's petition will be granted and a decree in accordance herewith will be entered.